## BAILEY v. STATE BOARD OF PUBLIC AFFAIRS et al.

No. 31677. Nov. 14, 1944.

*153 P. 2d 235.*

Walter L. Gray, of Oklahoma City, and Bill Ginder and J. Wilford Hill, both of Cherokee, for plaintiff in error.

Randall S. Cobb, Atty. Gen., and S. H. King, Asst. Atty. Gen., for defendants in error.

HURST, J. This is an original proceeding in this court to prevent the State Board of Public Affairs from carrying out certain acts under authority of Senate Bill No. 184 of the 19th Legislature, S. L. 1943, page 235.

The State Board of Public Affairs is charged with the management of the penal and eleemosynary institutions of the state. In order to relieve the congestion in some of said institutions the 19th Legislature passed Senate Bill 184, section 1 of which is as follows:

"Section 1. Due to the great number of patients and inmates in some of the

penal and eleemosynary institutions of the State and in order to relieve such congestion and to provide a better and more economical administration of the Institutions under the jurisdiction and control of the State Board of Public Affairs, said Board with the approval of the Governor is hereby authorized to transfer either in whole or in part the functions, inmates, personnel and funds from one institution to another institution under its control, to consolidate institutions, or close them entirely, if in the Board's judgment it is warranted. The State Board of Public Affairs with the approval of the Governor shall have full and complete authority to use its discretion in making any s h i f t s, changes, consolidation, transfers or suspensions which appear economically or otherwise advisable to the Board. In transferring funds from one institution to another, the State Board of Public Affairs shall take into consideration the needs of the respective institutions involved in the transfer, and the amount of funds available for both institutions so that both can operate efficiently and to the best interests of the inmates of said institutions. The transfer of funds shall be by resolution of the State Board of Public Affairs approved by the Governor, and the transfer shall not become effective until a duly authenticated copy of the resolution has been filed with the State Auditor. The provisions of this act shall not be construed to limit or restrict the authority of the State Board of Public Affairs to transfer individual inmates from one institution to another under existing law. In every case of a transfer of inmates the State Board of Public Affiars shall cause a permanent record to be kept of the transfer of such inmates at both of the institutions involved in the transfer."

Senate Bill No. 2 of the Nineteenth Legislature, S. L. 1943, page 302, makes appropriations for said institutions for the two fiscal years ending June 30, 1944, and June 30, 1945. Section 1 of that act contains a clause practically identical with section 1 of Senate Bill 184, above. Each act contains a severability clause. The two laws are in pari materia and are to be construed together. State ex rel, Marland v. Phil-

lips Pet. Co., 189 Okla. 629, 118 P. 2d 621.

On November 22, 1943, the State Board of Public Affairs passed a resolution, which was aproved by the Governor on the same day, with the view of carrying out the policy declared by Senate Bill 184, which, omitting the first two paragraphs reciting the substance of the law, is as follows:

"Whereas, in order to relieve congestion in certain of said institutions and to provide a more economical administration thereof, the State Board of Public Affiars finds that it is advisable and necessary to consolidate certain institutions and to transfer the functions and funds and certain inmates and patients from one institution to another.

"Now, therefore, be it resolved that the following orders relating to the consolidation and transfer of certain institutions under the jurisdiction of the State Board of Public Affairs be made:

"1. The West Oklahoma Home for White Children, located near Helena, Oklahoma, is hereby consolidated with the Whitaker State Orphan Home, located near Pryor, Oklahoma, and all of the inmates of said first institution are hereby ordered to be transferred to said second institution. At this particular time there shall be no transfer of funds.

"2. After the removal of the inmates in the West Oklahoma Home for White Children to the Whitaker State Orphan Home, the State Training School for White Boys, located near Pauls Valley, Oklahoma, is hereby transferred, including inmates, personnel and funds, from said institution to what is now the West Oklahoma Home for White Children at Helena.

"3. After the removal of the inmates, personnel and funds from the State Training School for White Boys at Pauls Valley to the West Oklahoma Home for White Children at Helena, all inmates of the institutions set forth below suffering from epilepsy are hereby transferred to what is now the State Training School for White Boys near Pauls Valley, Oklahoma:

Central Oklahoma State Hospital at Norman;

Eastern Oklahoma Hospital at Vinita;

Western Oklahoma Hospital at Supply;

Northern Oklahoma Hospital at Enid.

"In order to support and maintain the epileptic patients hereby ordered transferred to the Pauls Valley institution funds from the appropriations made for the Central Oklahoma State Hospital, the Eastern Oklahoma Hospital, and the Western Oklahoma Hospital, by subsequent orders of this Board shall be transferred for the purpose of supporting and maintaining said epileptic patients at the Pauls Valley institution.

"4. The expense of making these transfers and consolidation, and the removal of the inmates of said institutions as herein ordered, shall be paid from funds allocated to this Board out of the Governor's Contingency and Emergency Funds under the provisions of Senate Bill No. 197, of the Nineteenth Legislature, page 328, Oklahoma Session Laws 1943.

"5. A permanent record shall be kept at the institutions named in the above orders of the inmates involved in the consolidation and transfers herein provided for, such record to be kept of such inmates at both of the institutions involved in the transfer of each particular inmate."

The purpose of this action is to prevent the State Board of Public Affairs from carrying out said resolution on the ground that Senate Bill 184 is unconstitutional, and the acts about to be carried out under the resolution are unauthorized and would be void. Plaintiff sues as a taxpayer. He urges several reasons why the act is unconstitutional.

1. Plaintiff first contends that Senate Bill 184 is violative of that part of section 19, art. 10, of the State Constitution, which provides that "no tax levied and collected for one purpose shall ever be devoted to another purpose."

The moneys appropriated by Senate Bill No. 2 are appropriated out of the general revenue fund of the state, the public building fund and the revolving fund of certain of said institutions. And the money to be used in making the transfers is to come from the "Governor's Contingency and Emergency Fund" of $900,000, which is appropriated out of the general revenue fund. S. L. 1943, page 328. The general revenue fund comes from many sources and may ordinarily be used to finance any proper state function, including the care of the inmates in the penal and eleemosynary institutions.

The plaintiff does not point out where any of the funds sought to be used in carrying out the proposed acts were raised for a particular purpose inconsistent with the use proposed to be made of them. The use of the funds for the purposes stated in the resolution is specificially authorized by Senate Bill No. 2 as well as by Senate Bill No. 184, and the Governor's Contingency and Emergency Fund was created for just such emergencies as the State Board of Public Affairs and the Governor have found to exist in the instant case.

2. It is next contended that Senate Bill 184 is in conflict with article 21 of the State Constitution, which authorizes the Legislature to establish and support "penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require." The plaintiff contends that since the institutions here involved were created and located by legislative enactment, only the Legislature can by specific legislation change their location. It is undoubtedly true that the location of the institutions can be changed only pursuant to a valid law. But the very acts involved here are sanctioned by the Legislature. Article 21 is permissive only. and we fail to see how Senate Bill No. 184 violates it.

3. It is next contended that Senate Bill No. 184 is violative of section 1, art. 4, of the State Constitution, in that it delegates legislative power to the

State Board of Public Affairs. This is the most serious question presented.

The board does not propose to close or abolish any institution. In order to take care of the emergency, it proposes to consolidate some of them and change the functions for which the institutions near Pauls Valley and Helena were originally intended. Since both Senate Bill No. 2 and Senate Bill No. 184 have severability clauses, we are not concerned with the question as to whether certain functions that might be performed under them, such as closing or abolishing institutions, are essentially legislative. The sole question is whether the acts of shifting inmates, personnel and appropriations from certain institutions to other institutions and changing the functions for which some were created are legislative or administrative. The plaintiff contends that they are essentially legislative. The defendants contend that they are administrative. Plaintiff does not contend that the acts sought to be prevented do not come within the terms of the two statutes or that the inmates of the institutions affected will not be best served by making the proposed transfers or that any unreasonable or arbitrary exercise of discretion is involved.

The plaintiff relies largely on decisions having to do with laws enacted under the police power which restrict the use of property or the practice of a trade, occupation or profession. Much has been written on this subject, and decisions may be found representing all shades of opinion on the question. It would serve no useful purpose to review many of those decisions.

That there may be a certain degree of blending of the three powers of government is well recognized. 12 C. J. 803; 16 C. J. S. 293; 6 R. C. L. 146; 11 Am. Jur. 881; 42 Am. Jur. 314. As was well said by Justice Holmes in Springer v. Philippine Islands (1927) 277 U. S. 189, 48 S. Ct. 480, we cannot carry out the distinctions between the three powers of government "with mathematical precision and divide the branches into watertight compart-ments" and the Interstate Commerce Commission performs legislative, executive and judicial acts "softened only by quasi." And it is no longer doubted that Congress or the Legislature may delegate to others many powers which it may itself rightfully exercise, such as the power to fix utility rates, the power to lay out highways, and the power to make rules and regulations having the force and effect of law to promote the public health, safety, morals and general welfare, under authority of the police power. This thought was expressed by Chief Justice Marshall in Wayman v. Southard (1825) 6 L. Ed. 253, at 263, as follows: "But Congress may certainly delegate to others powers which the Legislature may rightfully exercise itself." The rule is one of necessity. The Legislature ordinarily meets but once every two years, and then only for a short period of time. See Insurance Co. of North America v. Welch, 49 Okla. 620, 628, 154 P. 48, Ann. Cas. 1918E, 471. While it is not in session, the government must be carried on, and it must delegate certain powers and discretion to others in carrying on essential functions of government. In Cooley's Constitutional Limitations (8th Ed.) page 230, it is said: "If this could not be done there would be infinite confusion in the laws, and in an effort to detail and particularize, they would miss sufficiency both in provision and execution." And as was said by Justice Harlan, it "would be to stop the wheels of government and bring about confusion, if not paralysis, in the conduct of public business." Union Bridge Co. v. United States, 204 U. S. 364, 27 S. Ct. 367. For an excellent discussion of this subject, see Trustees of Saratoga Springs v. Saratoga Gas, etc., Co., 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N.S.) 713, 14 Ann. Cas. 606. In discussing the theory of separation of the powers of government, Justice Story said: "The true meaning is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments." Story on the Constitution (5th

Ed.) §525. This same thought was expressed by James Madison in No. 47 and No. 48 of the Federalist papers. See, also, 11 Am. Jur. 881, note 11.

One of the best statements of the rule as to what power may or may not be delegated by the Legislature is found in Cincinnati, etc., Co. v. Clinton County Com'rs (1852) 1 Ohio St. 77, at 88, quoted with approval in Associated Industries v. Industrial Welfare Commission, 185 Okla. 177, 90 P. 2d 899, as follows:

"The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

But it is urged by the plaintiff that Senate Bill No. 184 does not lay down a sufficient standard to guide the State Board of Public Affairs and that an unfettered discretion is conferred upon the board. The policy declared is to "relieve such congestion and to provide a better and more economical administration of the institutions." The acts authorized to carry out this policy are to "transfer either in whole or in part the functions, inmates, personnel and funds from one institution to another institution under its control, to consolidate institutions, or close them entirely." The plaintiff does not point out how the Legislature could reasonably have defined the policy and fixed the standards any more definitely than was done in the acts now under consideration. And, after all, the Legislature has, and must have, a wide discretion as to the minuteness with which the policy or standard shall be expressed and the courts should be reluctant to interfere with that discretion. The policy or standard may be expressed in general terms or in detail as the Legislature may think best. 16 C. J. S. 351, §138; 11 Am. Jur. 955, §240. As was said by Chief Justice White, the Legislature here "legislated on the subject as far as was reasonably practicable." Buttfield v. Stranahan (1903) 192 U. S. 470, 24 S. Ct. 349. And as was said by Justice Holmes, the statute "fixes the only standard that is practicable or needed." Avent v. United States (1924) 266 U. S. 127, 45 S. Ct. 34.

The statutes in question give certain discretion to the State Board of Public Affairs in caring for the wards of the state in the named institutions. The discretion is not unfettered. It is to be exercised in a certain manner after finding the facts as to how the evils found by the Legislature to exist and referred to in the acts may be best remedied. Definite sums are appropriated for specific purposes, which satisfies the requirements of section 55, art. 5, of the State Constitution. The board is limited by the amounts of such appropriations. Only certain state institutions are involved. The appropriations are to be used to provide for the very persons for whose care the funds were appropriated. The discretion is as to where they shall be cared for. The board can exercise its discretion only with the approval of the Governor. The spending of the appropriations and care of the wards call for the exercise of functions which, in their dominant aspect, are executive. The discretion here is incidental to the exercise of those executive functions.

In State ex rel, Murray v. Carter, 167 Okla. 473, 30 P. 2d 700, this court sustained an act of the Legislature which authorized the State Board of Public Affairs, with the approval of the Governor, to transfer one item of an appropriation to another item. In this connection see, also, Smith v. Patterson, 130 Ore. 73, 279 P. 271; State v. Louisiana State Board of Education, 190 La. 565, 192 So. 676; 16 C. J. S. 378.

We are committed to the rule, which obtains generally, that the courts will not declare a statute unconstitutional unless its invalidity appears beyond a reasonable doubt. Baker v. Carter, 165 Okla. 116, 25 P. 2d 747.

We conclude that the acts sought to be prevented are executive and administrative, not legislatve, and the discretion vested in the State Board of Public Affairs does not render the statutes invalid in the respects here involved.

For other authorities bearing on the question, see Patterson v. Stanolind Oil & Gas Co., 182 Okla. 155, 77 P. 2d 83; Herrin v. Arnold, 183 Okla. 392, 92 P. 2d 977, 119 A. L. R. 1471; Gibson Products Co. v. Murphy, 186 Okla. 714, 100 P. 2d 453; Hampton v. United States, 276 U. S. 394, 48 S. Ct. 348; Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241; Yakus v. United States, 321 U. S. 414, 64 S. Ct. 660; Bowles v. Willinghom, 321 U. S. 503, 64 S. Ct. 641; Kansas Gas & Electric Co. v. Independence, 79 F. 2d 32, 100 A. L. R. 1479; State v. Whitman, 196 Wis. 472, 220 N. W. 929; Getty v. Gaffy, 96 Colo. 454, 44 P. 2d 506; 12 C. J. 844-853; 16 C.J.S. 354-388.

4. Since the acts sought to be prevented are administrative, there is no merit in the contention that Senate Bill No. 184 is violative of section 1, art. 5 of the State Constitution, providing for a referendum on legislative acts.

5. It is argued that Senate Bill No. 184 is in conflict with 10 O. S. 1941 §181, which provides for a Board of Public Managers for certain of said institutions. But if there is any conflict between the two statutes, the later statute, Senate Bill No. 184, would control and would repeal, by implication, section 181 insofar as they are in conflict. James v. Board of Commissioners, 103 Okla. 141, 229 P. 554; 59 C. J. 916, §517; 25 R. C. L. 914, §167.

Other contentions are made, but we believe they are disposed of by what we have said.

Plaintiff's prayer for relief is denied.

CORN, C.J., and RILEY, WELCH, and ARNOLD, JJ. concur. GIBSON, V.C.J., and OSBORN, BAYLESS, and DAVISON, JJ., dissent.

GIBSON, V.C.J. (dissenting). After an exhaustive review of the decisions of this and other state courts, and those of the Supreme Court of the United States, it is my firm conviction that the majority opinion has gone far beyond any judicial views yet expressed in an attempt to justify legislative and executive encroachment. The authorities cited in the majority opinion do not support either the conclusion or the reasoning therein.

By its express provisions Senate Bill No. 184 is clearly self-condemnatory. It says, and without restrictions: "The State Board of Public Affairs with the approval of the Governor shall have full and complete authority to use its discretion in making any shifts, changes, consolidations, transfers or suspensions which appear economically or otherwise advisable to the Board." That statement has direct reference to the provision next preceding it, which says, "said Board with the approval of the Governor is hereby authorized to transfer either in whole or in part the functions, inmates, personnel and funds from one institution to another institution under its control, to consolidate institutions, or close them entirely, if in the Board's judgment it is warranted."

In my opinion that language reveals an intention to confer upon the board certain well recognized policy-making powers which everywhere are said to be the exclusive and nondelegable functions of the lawmaking department of the state. The bill for that reason will not stand the test universally applied in distinguishing a mere legislative investment of administrative authority from an unconstitutional delegation of legislative power. See Yakus v. The United States, 321 U. S. 414, 88 L. Ed. 653, wherein it was said: "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." See, also, Bowles v. Willingham, 321 U. S. 503, 88 L. Ed. 626.

The powers delegated to the board in this case would allow the board, at its discretion, to abolish state institutions,

to consolidate them, and to alter or wholly change the particular functions for which they were established by law. Those powers are wholly legislative. Institutions such as those here considered are to be established and supported by the state in the manner to be prescribed by law (art. 21, Const.); and the Legislature, as the only lawmaking body, cannot delegate to any individual or board the power to establish, abolish, or materially alter those institutions. The Legislature alone may accomplish those things by duly enacted statutes. Orders of an administrative board cannot take the place of legislative power. Sec. 1, art. 4, Const.

The reasons for restricting the encroachment of the three branches of government, the one upon the functions of the others, have become so well fixed in the history of constitutional government that the question should require but little discussion.

Defendant board urges that said Senate Bill does not violate the requirement that neither branch of the government, the legislative, executive and judicial, shall execise the powers properly belonging to either of the others (sec. 1, art. 4, supra). It is said that the bill has declared a definite legislative policy, leaving to the board as an executive body the execution of the law according to the policy therein defined, pursuant to a guiding standard therein prescribed. The law is definite, says the board, with respect to the handling of the different institutions, depending for its execution merely upon the existence of certain facts to be found and determined by the board.

It is contended that the above circumstances bring the statute in question within the general rule that the Legislature may delegate to executive officers the power to determine certain facts on which the operation of the statute is, by its terms, made to depend. 12 C. J. 846; State ex rel. Murray, Governor, v. Carter, State Auditor, 167 Okla. 473, 30 P. 2d 700.

But a statute such as this, if it is to fall within the above rule and be saved from the objection of illegal delegation of legislative power, must not only declare a definite policy with respect to the subject of legislation, but must restrict within prescribed limits the functions of the executive board to the making of subordinate rules by which to determine the factual conditions to which the declared legislative policy is to apply, and by which said policy, if the facts warrant, is to be carried out. This statement finds support in Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446, wherein it was held, in effect, that regulations made by executive officers are valid only as subordinate to a legislative policy sufficiently defined by statute, and when found to be within the framework of such policy.

I would say that the attempted delegation by the Legislature of any power that would permit the executive board to infringe, to restrict, or to go beyond, the declared policy of the statute would not be subordinate to that policy, and would constitute an illegal delegation of legislative power.

The power of the executive board to act or not to act, in its discretion, after a determination of the facts upon which depend the operation of the declared policy, would deprive the statute of a definite legislative policy, and the same would fall short of the requirement that the delegated authority be subordinate to a declared policy. The effect in such circumstance would be an attempted delegation of the power to make the legislative policy. The Legislature cannot delegate its policy-making functions; the policy of the particular law is essentially the law itself. In Gibson Products Co. v. Murphy, 186 Okla. 714, 100 P. 2d 453, 457, when dealing with this question, the court said:

"The Legislature may not delegate its power to make laws, it must declare the policy and fix legal principles, but other agencies may be invested with power to ascertain facts to which the policy and principles apply, otherwise 'there would be infinite confusion in the

laws, . . . '. 1 Cooley, Constitutional Limitations 228 (8th Ed.)."

The statute in the instant case declares a policy, but not a definite policy such as is required to suit the rule permitting the Legislature to invest an administrative board with authority to apply the policy to the ascertained facts. The present statute would authorize the board to abolish, consolidate, and change the functions of certain state institutions at its pleasure, or to continue them if it so desires. It is not required to act even if the facts and circumstances would authorize action. Instead, the whole policy relative to the continued existence and operation of the institutions is turned over without restriction to the board. In so doing, the Legislature has attempted to renounce a duty that is exclusively its own and which cannot be turned over to another branch of the government. Associated Industries v. Industrial Welfare Comm., 185 Okla. 177, 90 P. 2d 899. The rule as there stated reads as follows:

"Power to determine the policy of the law is primarily legislative, and cannot be delegated, whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions, although partaking of a legislative character, is in its dominant aspect administrative and can be delegated."

The power of a board to carry out the legislative policy pursuant to definite regulations found within the framework of the declared policy, places upon the board the positive duty to apply the law or not to apply the law as the ascertained facts shall require. Whether the declared policy is to apply in a given instance cannot be discretionary with the executive officers. Such officers may exercise discretionary powers in determining the true facts, that is, whether the factual contingencies demanding application of the policy exist, but they cannot, after determining the facts, apply the legislative policy thereto, or not, as their own desires may dictate. If the ascertained facts require the application of the policy, the policy must be applied; if not, the officers must not attempt to apply the policy. To authorize such discretionary action would permit such officers to inaugurate a legislative policy, and result in an illegal delegation of legislative power.

That was the effect of Senate Bill 184, supra, and in my opinion it is therefore illegal and void as an unauthorized delegation of legislative power.

The majority opinion cites Panama Refining Co. v. Ryan, supra, merely as a case dealing with this particular subject. That case would seem to me to fully support my own views on the question, and the reasoning therein wholly out of sympathy with that of the majority opinion.

In the Panama Case many decisions are reviewed and the reasoning in each case is contrary to that of the majority opinion. For sake of brevity I shall not review them here.

As said in that case (p. 430):

"The question is not of the intrinsic importance of the particular statute before us, but of the constitutional processes of legislation which are an essential part of our system of government."

I therefore respectfully dissent.

OSBORN, BAYLESS, and DAVISON, JJ., concur.