BOARD OF PUBLIC ACCOUNTANCY — COMPETITION BIDDING RULE The competitive bidding rule (Rule No. 3.04), of the Oklahoma State Board of Public Accountancy is a valid regulation and is enforceable with respect to the accounting to be performed within the State of Oklahoma for commercial, governmental or other types of entities, regardless of whether such accounting is to be performed by accountants or firms located within or without the State of Oklahoma, and regardless of whether this accounting is to be performed on a permanent or casual basis. It is further the opinion of the Attorney General that the State Board of Public Accountancy has no jurisdiction to regulate competitive bidding by an accountant where such accounting is to be performed without the State of Oklahoma and in this regard, federal military reservations are considered outside the State of Oklahoma. We have considered your request for an opinion concerning the validity and applicability of the competitive bidding provisions regulating Oklahoma accountants which is Rule 3.04 of the Rules of General Application, promulgated by the Oklahoma State Board of Public Accountancy as amended June 5, 1970. Rule 3.04 is quoted as follows: "3.04 A CPA or a PA shall not make a competitive bid for professional services. Competitive bidding for public accounting services is not in the public interest, is a form of solicitation, and is unprofessional. "A competitive bid is defined as a proposal by a CPA or a PA to a prospective client to perform professional services when such proposal quotes the compensation to be received for such services and it is given with the knowledge that similar proposals are being solicited concurrently from one or more other CPAs or PAs. The fact that a CPA or a PA is solicited to make a proposal by a person or organization not already his client is indicative that similar proposals are being solicited from other CPAs or PAs and it shall be incumbent upon the CPA or PA to assure himself to the contrary by direct inquiry. Any proposal made under the foregoing circumstances is a competitive bid whether the proposed compensation is stated as a lump sum, a maximum amount, or any form of unit price, including per diem or per hour rates with or without a maximum sum." You asked the following specific questions concerning Rule 3.04: "1. Is it permissible for governmental entities in Oklahoma to se cure professional service of CPAs and PAs without bidding?" "2. Is it possible at the present time for the Oklahoma State Board of Public Accountancy to enforce its rule forbidding CPAs and PAs from making a bid for an engagement involving commercial, governmental or other types of entities?" "3. Are persons or firms practicing public accounting who come into the State of Oklahoma on a casual basis subject to the Public Accountancy Act of 1968 and the Rules of General Application of the Oklahoma State Board of Public Accountancy?" "4. Must firms with offices both within and without the State of Oklahoma follow the rules of Oklahoma with respect to bidding in seeking work to be performed within the State of Oklahoma? If not, may they use Oklahoma personnel in performing engagements secured by offices located outside the State of Oklahoma?" "5. What jurisdiction does the Board have with respect to competitive bidding by CPAs and PAs registered with this Board on engagements outside the State of Oklahoma? Are Federal military reservations considered 'outside the State of Oklahoma'?" Each of these questions may be answered by the general consideration of the power and delegated authority of the State Board of Public Accountancy. The Board has only such power and authority as are delegated to it by statute. In 2 Am. Jur. 2d, Administrative Law, Sec. 300, p. 126, is the following: "Administrative rules and regulations to be valid, must be within the authority conferred upon the administrative agency. A rule or regulation which is broader than the statute empowering the making of rules, or which oversteps the boundaries of interpretation of a statute by extending or restricting the statute contrary to its meaning, cannot be sustained. To the extent that a regulation is not in conformity with the statute and with controlling judicial interpretations of the statute it conflicts with the meaning of such statute and so is unauthorized; and regulations must conform, not only with the statute under which they are issued, but also with the constitution and other laws. "Administrative agencies must strictly adhere to the standards, policies, and limitations provided in the statutes vesting power in them. A rule or regulation to be valid may only implement the law, and regulations are valid only as subordinate rules and when found to be within the framework of the policy which the legislature has sufficiently defined. They are valid and binding only when they are in furtherance of the intention of the legislature as evidenced by its acts, and a regulation, valid when promulgated, becomes invalid upon the enactment of a statute in conflict with the regulation. However, an administrative regulation will not be considered as having been impliedly annulled by a subsequent act of the legislature unless the two are irreconcilable, clearly repugnant, and so inconsistent that they cannot have concurrent operation. It is a . . .wholesome and necessary principle that an administrative agency must pursue the procedure and rules enjoined upon it by the statute creating it, and show a substantial compliance therewith, to give validity to its action. * * *" It is well settled that regulations enacted by administrative agencies pursuant to the powers delegated to them have the force and effect of law and are equivalent to statutory enactment. Bailey v. State Board of Public Affairs (1951)194 Okl. 495, 153 P.2d 235; Southwestern Bell Tel. Co. v. State, 230 P.2d 260. At 59 O.S. 15.5 [59-15.5] (1970), the Public Accountancy Act of 1968, the Oklahoma State Board of Public Accountancy is expressly directed to "adopt and issue such . . .rules and regulations as are consonant with the purposes of this Act." It should be further noted that the Rules of General Application, including Rule 3.04, were existing regulations of the Oklahoma State Board of Public Accountancy at the time of enactment of the Public Accountancy Act of 1968. It is well settled that the re-enactment of a statute after it has been construed by the agency charged with its enforcement and without change indicative of disapproval impliedly 164 adopts the regulation. U.S. v. Falk, (1907) 204 U.S. 143,51 L.ed 411, Cf. Texas State Board of Examiners in Optometry v. Carp, (1967) 412 S.W.2d 307, 389 U.S. 52,19 L.ed.2d 51. It is abundantly clear that the Board's enactment of the cited regulation was a valid exercise of their delegated power unless such enactment can be said to be in contravention of the provisions of Article V, Section 44 of the Oklahoma Constitution prohibiting unlawful combinations, monopolies, trust, acts or agreements in restraint of trade. Title 79 O.S. 1 [79-1] (1961) provides that every act, agreement, contract, combination or conspiracy in restraint of trade, which is against public policy, is declared illegal. Title 79 O.S. 2 [79-2] (1961) provides that it is unlawful for any person rendering a service to the public to discriminate between different persons by rendering such service at a lower price in one area as opposed to another area or to one person or another person if the effect is to establish or maintain a monopoly hindering competition or restraining trade. With reference to 79 O.S. 1 [79-1] (1961) the initial test is whether or not the activity is against public policy. It is our opinion that the Rules of General Application promulgated by the Oklahoma State Board of Public Accountancy express public policy in this area and will continue to do so until repealed by the board, the legislature or are held invalid by a court of competent jurisdiction. If the regulations (Rules of General Application) have the effect of law, they cannot be contrary to public policy, since they are public policy. State v. Coyle, 7 Okl. Cr. 50,122 P. 243 (1912). The validity of the regulation having been established, the question remains as to the extent of its application. The regulation without question only extends to the territorial limits of the State of Oklahoma. The regulation would apply to commercial entities unless specific legislation preempts this field. The regulation would apply to an arm of the State of Oklahoma in the absence of special legislation pertaining thereto; the regulation would take precedence over city ordinances and regulations of school boards since such are inferior and subordinate governmental entities. The regulation would apparently not be applicable to United States government contracts on the basis of the opinion in Oklahoma City v. Leo Sanders (CA 10 1938) 94 F.2d 323. Therein the United States had purchased land in Oklahoma City upon which it proposed to construct a low cost housing project. The contractor, Leo Sanders, declined to comply with the terms of certain ordinances relating generally to contractors on the ground that the national government had exclusive jurisdiction. The Tenth Circuit Court of Appeals considering the case of his daily arrests for failure to comply with the terms of the ordinances referred to 80 O.S. 2 [80-2] (1961) which provides: "Exclusive jurisdiction in and over any lands so acquired by the United States shall be, and the same is hereby ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this State;" The Court found that the City of Oklahoma City did not have "the right to enforce the provisions of (the) ordinances in question." It is, therefore, the opinion of the Attorney General that the competitive bidding rule (Rule No. 3.04), of the Oklahoma State Board of Public Accountancy is a valid regulation and is enforceable with respect to accounting to be performed within the State of Oklahoma for commercial, governmental or other types of entities, regardless of whether such accounting is to be performed by accountants or firms located within or without the State of Oklahoma, and regardless of whether this accounting is to be performed on a permanent or casual basis. It is further the opinion of the Attorney General that the State Board of Public Accountancy has no jurisdiction to regulate competitive bidding by an accountant where such accounting is to be performed without the State of Oklahoma and in this regard, federal, military reservations are considered outside the State of Oklahoma. (Gary M. Bush)