GEORGE AKAHANE, et al., Plaintiffs, *v.* FRANK F. FASI, as Mayor of the City and County of Honolulu, et al., Defendants

NO. 6248

MAY 31, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This original action, brought by the city council of the City and County of Honolulu through its duly elected members (hereinafter city council or plaintiffs) against the Mayor of the City and County of Honolulu and its Corporation Counsel (hereinafter defendants), was submitted to this Court upon an agreed statement of facts pursuant to Rule 21,[1] Rules of the Supreme Court of the State of Hawaii. Plaintiffs are seeking a judgment from this Court "[d]irecting the Defendant Corporation Counsel to approve an appropriate contract between the City Council and a private consultant."

Plaintiffs' prayer for relief is denied under the circumstances of this case.

---

[1] Rule 21, Rules of the Supreme Court of the State of Hawaii, reads:

Rule 21. Agreed Facts, Submission on.

(a) Submission. Parties to a question in difference which might be the subject of a civil action or proceeding in this court or the circuit court or tax appeal court may, without action, agree upon a case containing the facts upon which the controversy depends, a statement of the question or questions in difference, the contentions of the parties, and the form of judgment to be rendered.

(b) Good Faith. It must be shown by affidavit that the controversy is real and the proceeding in good faith to determine the rights of the parties.

(c) Disposition. The court may, in its discretion, require the case to be submitted to the appropriate court as in other cases, subject to appeal. If the court entertains the case, the judgment rendered thereon shall be entered and may be enforced as in other cases.

## ISSUE

The parties have agreed in their submission of this case upon an agreed statement of facts that:

The question in difference concerns the separation of powers between the legislative and executive branches of the government of the City and County of Honolulu. Specifically the issue can be bifurcated as follows: first, whether Plaintiff is authorized and empowered to employ independent contractors to perform consultative services; and second, if Plaintiff has the abovementioned authority, is this authority limited in exercise to valid legislative purposes.

Defendants, however, in their answering brief concede that the city council is authorized and empowered under the Revised Charter of the City and County of Honolulu 1973 (hereinafter "RCH" or "Charter") to employ independent contractors to perform consultative services. Further, the parties do not dispute that this authority is limited in exercise to valid legislative purposes, except as otherwise provided by the Charter.

The basic issue as we see it is not whether city planning is a valid legislative purpose,[2] but whether the expenditure of public funds by the city council for the purpose of employing an independent contractor to make a study for the formulation of a development plan for Kakaako, Honolulu, Hawaii, is authorized in the manner proposed by the plaintiffs and under the circumstances of this case.

## STATEMENT OF THE CASE

The essential facts upon which this controversy depends are set forth in the agreed statement of facts; *inter alia,* as follows:

---

[2] As discussed, *infra,* the holding in this case necessarily finds that city planning is primarily an executive function as well as a valid legislative function to the extent allowed by the Charter.

1. The City and County of Honolulu is a body politic and corporate whose structure is as provided by the Revised Charter of the City and County of Honolulu . . . .

2. That pursuant to §1-103, RCH, the government of the City and County of Honolulu (hereinafter "City") consists of two coordinate branches known as the "Legislative Branch" and the "Executive Branch."

3. That except as otherwise provided by the Charter, the legislative power of the City is vested in and exercised by the Plaintiff City Council; and except as otherwise provided by the Charter, the executive power of the City is vested in and exercised by the Defendant Mayor.

4. That pursuant to its legislative powers, Plaintiff City Council authorized the City, by Resolution No. 42 (1975), to apply for federal funds under the community development block grant program. . . .

5. That said community development block grant program was established by the Housing and Community Development Act of 1974 (P.L. 93-383) which has as its primary objective, as stated in §101(c) of said Act, "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income."

6. That pursuant to said Act that City's application hereinabove referred to was approved and the City received or had committed for its expenditures $13,099,000.00 subject to the terms and conditions of the Grant Agreement . . . [which was] accepted on behalf of the City by the Defendant Mayor on May 30, 1975.

7. That of said $13,099,000.00, the sum of $906,000.00, as allowed by §104(b) (1) of said Act, has been designated for contingency and/or unspecified local option activities . . . .

8. That of the said $906,000.00 designated for contingency and/or unspecified local option activities, $400,000.00 has been allocated to Plaintiff City Council as part of its legislative budget effective July 1, 1975, and

placed in a "Community Development Fund" to be expended by the Office of Council Services . . . . Subsequently on January 28, 1976, Resolution No. 27 (1976) . . . was adopted by Plaintiff which transferred these monies from Council Services to Plaintiff.

9. That of said $400,000.00 in the Community Development Fund, $250,000.00 is for expenditure in the development planning of the communities of Kakaako and Ewa, . . . which expenditures are within the purposes of §570.200(a) (12) of the Rules and Regulations established in accordance with P.L. 93-383. . . .

10. That if the expenditure of said $250,000.00 is for a purpose reserved by the Charter to the executive branch of the City government then the fact that the $250,000.00 is part of the legislative budget does not thereby legitimize its expenditure by the legislative branch.

11. That pursuant to §8-106.1, RCH, the presiding officer of the Plaintiff City Council has submitted to the chief budget officer a schedule showing the expenditure of said $400,000.00 in the Community Development Fund anticipated for each quarter of the current fiscal year. . . .

12. That pursuant also to § 8-106.1, RCH, said schedule does not require the approval of nor can it be altered by Defendant Mayor, and the Plaintiff City Council may proceed without any other authority to incur obligations and make expenditures after the schedule has been submitted; provided that appropriations shown on the schedule are otherwise proper and expenditures pursuant thereto are not unlawful.

13. That Plaintiff City Council, as part of its legislative function, has ordained, effective January 23, 1976, the regulation, for an interim period extending until November 28, 1976, of the issuance of building permits for Kakaako. The stated purpose of this ordinance is to provide an interim in which Plaintiff might formulate plans which may involve amendments to the existing General Plan, Detailed Land Use Map, Development Plan and the Comprehensive Zoning Code, all as shown by Ordinance No. 4551, approved as to form and legality

by the Office of the Defendant Corporation Counsel and approved by the Defendant Mayor. . . .

14. That §§5-412.1 and 5-412.2, RCH, expressly authorize and empower Plaintiff City Council to revise or amend the City's general plan or any existing development plan.

15. That pursuant to its legislative budget, §8-106.1, RCH, and Ordinance No. 4551, Plaintiff City Council seeks to enter into a contract (hereinafter Kakaako contract) with a private consultant, the stated purpose of which contract shall be to review, evaluate, consolidate, and update all previous planning studies made of Kakaako and present to the Plaintiff City Council the consultant's considered opinion of the optimum alternatives for the development of Kakaako and propose legislation by which said alternatives may be realized. . . .

## OPINION

The two extremes of this controversy are, the proposition on the part of the plaintiffs, that city planning is a valid legislative purpose, that a development plan is an integral part of city planning, and therefore, a study commissioned for the formulation of a development plan is within the ambit of a valid legislative purpose; and, on the part of the defendants, that the power to pursue the above mentioned study and its purpose rests exclusively with the executive branch of government and any attempt by the legislative body to exercise such power contravenes the doctrine of separation of powers.

There is no doubt here that the study in question would be helpful to the city council in determining whether and what revisions or amendments to the existing general plan or development plan should be made. The Charter clearly gives the city council the power to initiate legislation designed to revise and amend an existing general plan or development plan. See RCH § 5-412(2).

Section 3-108(7) of the Charter authorizes the city council to "establish an office of council services and create such

positions therein as it deems necessary to assist it in the exercise of its legislative powers." In this regard, the Charter Commission in its final report at pages 12-13 stated:

4. Office of council services. The Commission has authorized the council to establish an office of council services and to create and fund all positions for this office. This office may be established by ordinance. The salaries of all positions, staff and the head of this office, will be fixed by ordinance, which is subject to veto by the mayor. Staff for and the head of the office of council services shall be appointed by and serve under the direction of the presiding officer.

\* \* \* \*

The Charter Commission believes that this proposed amendment to Article III, Chapter 1 is one of the most important changes affecting the legislative branch of city government. The office of council services is a necessary adjunct to and is supportive of the policy-formulation or legislative role of the city council which was discussed earlier. The council should use this office as a tool for decision-making — to assist it in analyzing the city's policies and financial programs for their effectiveness and adequacy and in identifying alternative programs and policies and major problems which endanger the public interest and welfare. Such an office shall provide staff support to subject areas within the jurisdiction of the legislative body.

The Charter Commission recognized that "[t]he council is empowered to engage independent contractual services for itself, subject to the availability of legislative funds."[3] Final Report of the Charter Commission, City and County of

---

[3] The parties have agreed in their "Submission of Case Upon Agreed Statement of Facts":

10. That if the expenditure of said $250,000.00 is for a purpose reserved by the Charter to the executive branch of city government then the fact that the $250,000.00 is part of the legislative budget does not thereby legitimize its expenditure by the legislative branch.

Honolulu 1971-1972, at page 13. It further stated at page 29 of the Final Report that "[i]t is intended that the council may obtain personal services by contract, personal services of a temporary nature, personal services performed on a fee, contract or piecework basis and temporary student help without certification by the director of civil service or approval by the civil service commission." See RCH §§ 6-303, 6-304.

These provisions and statements, absent more definitive charter provisions, however, cannot be construed to give the city council carte blanche authority to engage independent contractual services[4] in the interest of its legislative policy-making and investigative powers.

In *City Council v. Fasi,* 52 Haw. 3, 5, 467 P.2d 576, 578 (1970), we stated:

> The charter has as its basic scheme a clear and definite separation of the legislative power and the executive power of the city and county, vesting the former in the legislative branch represented by the council and the latter in the executive branch headed by the mayor. Under the separation of powers so provided, each branch is coordinate with the other, and neither may exercise the power vested in the other. However, this does not mean that the wall of separation is complete and either branch is free to exercise its power as it pleases without any say by the other. (Citations omitted.)
>
> The charter contains a number of provisions which grant to one branch some voice with regard to the actions of the other. . . .

Such is the case at hand. The Charter expressly provides for two coordinate branches of city government to be known as the Legislative Branch and the Executive Branch. RCH § 1-103. The Charter Commission, however, took pains to

---

[4] There are two other areas where the city council is expressly and clearly authorized by the Charter to engage independent contractual services: (1) the employment of special counsel to represent itself, RCH § 3-108(5); and (2) the employment of a certified public accountant or a firm of certified public accountants, RCH § 3-115.

emphasize that "the word 'coordinate' *is not to be interpreted to mean co-equal in functions,* but rather as co-equal in rank, importance, independence and dignity." (Emphasis added.) Final Report of the Charter Commission, City and County of Honolulu 1971-1972, at page 10.

Section 5-412 of the Charter states, *inter alia:*

1. The council shall adopt the general plan or revisions thereof by resolution and development plans or amendments thereto by ordinance. Resolutions adopting or revising the general plan shall be laid over for at least two weeks after introduction . . . . Upon adoption, every such resolution shall be presented to the mayor, and he may approve or disapprove it pursuant to applicable provisions governing the approval or disapproval of bills.

The general plan and all development plans shall be kept on file in the department of general planning.

2. Any revision of or amendment to the general plan or any existing development plan may be proposed by the council and shall be processed in the same manner as if proposed by the chief planning officer. Any such revision or amendment shall be referred to the chief planning officer and the planning commission by resolution. If the planning commission disapproves the proposed revision or amendment or recommends a modification thereof, not accepted by the council, or fails to make its report within the period of thirty days, the council may nevertheless adopt such revision or amendment, but only by the affirmative vote of at least two-thirds of its entire membership.

It is clear from a reading of the Charter and the Final Report of the Charter Commission 1971-1972 "that such provisions were not designed as departures from the principle of separation of powers to enable one branch to exercise some power vested in the other, but are safeguards against the improvident legislative or executive actions." *City Council v. Fasi, supra,* at page 6, 467 P.2d at 578.

It is well recognized, and the defendants do not dispute, that an occasional overlap or blending of powers between the various branches of government occurs. *Ex parte Grossman,*

267 U.S. 87 (1925); *City Council v. Fasi, supra; Bailey v. State Board of Public Affairs*, 194 Okla. 495, 153 P.2d 235 (1944); 16 Am. Jur. 2d Constitutional Law § 214 at pp. 455-457. As was succinctly stated by Justice Holmes in *Springer v. Government of the Philippine Islands*, 277 U.S. 189, 211 (1928), "we do not and cannot carry out the distinction between legislative and executive action with mathematical precision and divide the branches into watertight compartments . . . ."

What the city council proposes to do is essentially set forth in paragraph 15 of the agreed statements of facts, *supra*, and in Ordinance No. 4551 (1975), which states:

The City Council is in the process of formulating development policies and plans for the Kakaako area which may involve amendments to the existing General Plan, Detailed Land Use Map, Development Plan and the Comprehensive Zoning Ordinances. The proposed amendments may include the establishment and creation of a Special Design District for this area. In order to formulate City Council's objectives and policies, the City intends to retain a firm of planning consultants to review, evaluate, consolidate and update all previous planning studies made by public agencies and private concerns including the State of Hawaii, large estate landowners, and other civic and professional groups.

As stated previously Section 5-412-2 of the Charter provides: "Any revision of or amendment to the general plan or any existing development plan *may be* proposed by the council . . . ." (Emphasis added.)

However, it is our opinion that under the Charter such in-depth studies must be the initial responsibility of the city departments established for that purpose. Article V of the Charter reserves and enumerates the power of general planning and its incidental functions in various executive departments and agencies.[5] It is the executive branch that is

---

[5] *See* RCH §§ 5-403, 5-404, 5-406, 5-410, 5-411, 5-412. *See also,* RCH §§ 6-403, 6-1003, 6-1103, 6-1202.

fully staffed and departmentalized to expeditiously proceed with this reserve power. However, we do not construe this reservation of power to mean "exclusively reserved."

We cannot proceed on the assumption that the relationship between the legislative branch and the executive branch is of an adversary nature. Each branch has a responsibility to cooperate with the other to effectuate each of their respective functions. *See Forbes v. Earle,* 298 So.2d 1 (Fla. 1974). The Charter Commission clearly indicated that the intent of the amended Charter was to create a strong mayor and a strong council:

> The Commission hopes that the strong mayor-strong council form of government which it has sought to create will strengthen the council's role of policy-making without permitting interference in administrative matters.
>
> At the same time, it should be noted that the executive role of the mayor was strengthened to meet the increasing administrative complexity of city government.

Final Report of the Charter Commission, City and County of Honolulu 1971-1972 at page 11.

It is clear from a reading of the Charter Commission's Final Report that "the legislative branch is *primarily* responsible for broad policy-making and that the executive branch is *primarily* responsible for the implementation and execution of the policies set by the legislative branch." (Emphasis added.) Final Report of the Charter Commission, City and County of Honolulu 1971-1972 at page 10. The plaintiffs recognize this basic policy of government functions. The defendants also do not dispute this, stating in their answering brief at page 16: "The Charter thus vests the *primary* duty and responsibility for the mechanics of municipal planning in the Department of General Planning and its Chief Planning Officer." (Emphasis added.) Thus, it is evident that the executive branch is vested with the primary, and not necessarily exclusive, duty and responsibility for municipal planning, of which the type of study contemplated by the city council is a part.

Critical to this controversy is the fact that the city council never made or submitted a request to the executive branch for the type of study under question. The record is devoid of evidence of any resolution made by the city council to the executive branch accompanied by proper appropriation, if necessary, requesting the desired study.

As discussed earlier, the executive branch is primarily responsible to initially proceed and conduct such in-depth studies relating to city planning. Where, however, after a proper request by the city council is made, the executive branch is uncooperative or has failed, within a reasonable period, to assume and proceed with their responsibility, we are of the opinion that the city council can and must assume the reserved, but not exclusive, powers of the executive branch in the issue herein as an incidental exercise of their power to amend or revise an existing general plan or development plan.

Moreover, where the executive branch has submitted to the city council proposed general or development plans or revisions and amendments thereto, the city council is necessarily empowered and authorized to employ consultants with the necessary expertise to review, evaluate, consolidate, and to advise the council on these various proposals.

It has been said of municipal planning:

Planning . . . has in view . . . the physical development of the community and its environs in relation to its social and economic well-being for the fulfillment of the rightful common destiny, according to a "master plan" based on "careful and comprehensive surveys and studies of present conditions and the prospects of future growth of the municipality," and embodying scientific teaching and creative experience. In a word, this is an exercise of the State's inherent authority, antedating the *Constitution* itself, to have recourse to such measures as may serve the basic common moral and material needs. Planning to this end is as old as government itself — of the very essence of an ordered and civilized society. (Citation omitted.)

*Angermeier v. Borough of Sea Girt*, 27 N.J. 298, 308, 142 A.2d 624, 629-630 (1958).

The city council's power to act upon or participate in such important and far-reaching activities cannot be denied for lack of initiative or response from the executive branch. The power under RCH § 5-412, *supra*, to amend or revise the general plan or development plans and the further mandated power under RCH § 6-1006 to "enact zoning ordinances which shall contain the necessary provisions to carry out the purpose of the general plan and development plans" vests the city council with the power to intelligently effectuate their duties and responsibilities to the people of the City and County of Honolulu upon a failure by the responsible executive department or departments, and/or the defendants, to satisfactorily respond to proper requests from the city council.

The above procedure would avoid duplication of costs which the taxpayers of this State would sustain if each branch of government had an independent power to proceed with the primary responsibilities and duties of the other. It should be made clear that the holding in this case does not foreclose the city council from obtaining this assistance because the information obtained might also be relevant to the formulation by the executive branch of an original general plan and/or development plan. Our opinion herein would further avoid a competitive situation between the branches and would also prevent a complete bypassing of the executive responsibility thereby diluting or damaging to a point of impotency the executive responsibility.

Because Ordinance No. 4551 (1975) provides for the exercise by the city council of executive powers which is inconsistent with the primary responsibilities and duties of the executive branch, we hold that the city council is, without first requesting of the executive branch the type of study desired, unauthorized to proceed with such study.

*Walter G. Chuck (Huddy T. Lucas* with him on the briefs) for plaintiffs.

*Randolph Slaton,* Deputy Corporation Counsel *(James E. Ross* and *William M. Kahane,* Deputies Corporation Counsel, on the brief) for defendants.

DISSENTING OPINION OF KIDWELL, J.,
WITH WHOM RICHARDSON, C.J., JOINS

I disagree with the conclusion reached in the majority opinion and would hold that the plaintiffs (the "Council") are empowered to employ independent consultants to provide the services described in the proposed contract.

By the stipulation of the parties which submits this case to us as an original proceeding under Rule 21, the issues were stated to be, first, whether the Council may employ independent contractors to perform consultative services and, second, whether such authority, if existent, "is limited in exercise to valid legislative purposes." Defendants conceded the first issue in their brief. As to the second issue, defendants argued that the Council may employ consultants only to assist it in carrying out its legislative function and that a study commissioned for the formulation of a development plan of Kakaako is outside the ambit of a valid legislative purpose. The statement of facts expressly informs us that the parties are in agreement that the Charter authorizes and empowers the Council to revise or amend the general plan or any existing development plan, and it appears that there is no question that the Council's legislative function includes such revisions or amendments. The arguments advanced in the defendants' brief make it quite apparent that the proposed study is viewed by them as having for its purpose the preparation of an initial development plan which the Council is without authority to initiate, prepare or formulate. In their brief, the defendants carefully distinguish the powers granted by the Charter to the Council to revise or amend the general plan or any existing development plan from its authority to adopt the original general plan or an initial development plan. It is nowhere argued in the defendants' brief that the Council lacks authority to employ consultants to assist it in a

revision or amendment of the general plan or any existing development plan, and defendants argue only that the Council lacks such authority with respect to the formulation of an initial development plan. To appreciate the significance of this distinction, it is necessary to look at the Charter provisions relating to the planning process.

The Charter creates a department of general planning, of which the administrative head is the chief planning officer. Charter § 5-401. Among the duties of the chief planning officer, as spelled out in the Charter, are those of preparing a general plan[1] and revisions thereof at least every five years and development plans[2] and annual reviews thereof. Charter § 5-403(a). The Charter provides: "The chief planning officer shall prepare the general plan and development plans" and:

---

[1] *Section 5-408. General Plan.* The general plan shall set forth the city's broad policies for the long range development of the city. It shall contain statements of the general social, economic, environmental and design objectives to be achieved for the general welfare and prosperity of the people of the city through government action, city, State or federal. The statements shall include, but not be limited to, policy and development objectives to be achieved with respect to the distribution of social benefits, the most desirable uses of land within the city, the overall circulation pattern and the most desirable population densities within the several areas of the city.

[2] *Section 5-409. Development Plans.* "Development Plans" mean relatively detailed schemes for implementing and accomplishing the development objectives and policies of the general plan within the several parts of the city. A development plan shall include a map of the area of the city to which it is applicable; shall contain statements of standards and principles with respect to land uses within the area for residential, recreational, agricultural, commercial, industrial, institutional, open spaces and other purposes and statements of urban design principles and controls; and shall identify areas, sites and structures of historical, archeological, architectural or scenic significance, a system of public thoroughfares, highways and streets, and the location, relocation and improvement of public buildings, public or private facilities for utilities terminals and drainage. It shall state the desirable sequence for development and other purposes as may be important and consistent with the orderly implementation of the general plan.

Development plans may contain statements identifying the present conditions and major problems relating to development, physical deterioration and the location of land uses and the social, economic and environmental effects thereof; may show the projected nature and rate of change in present conditions for the reasonably foreseeable future based on a projection of current trends; and may forecast the probable social, economic and environmental consequences of such changes.

"The council shall adopt the general plan or revisions thereof by resolution and development plans and revisions thereto by ordinance." Charter §§ 5-411, 5-412.

The manner in which the general plan and development plans are to reach the Council when prepared by the chief planning officer is not prescribed in the Charter, although reference is made in § 5-410 to the submission of the plans by the chief planning officer to the Council. Specific provision is made, however, for the proposal by the Council of any revision of or amendment to the general plan or any existing development plan, which is to be processed in the same manner as if proposed by the chief planning officer. Any such revision or amendment is required to be referred to the chief planning officer and the planning commission, and if not approved by the planning commission may be adopted by the council only by a two-thirds vote. Charter § 5-412.

Despite the obvious significance of the question whether the proposed consultant contract dealt with the preparation of an original general plan or an initial development plan, on the one hand, or a revision or amendment of an existing general plan or development plan, on the other, the agreed statement of facts leaves this question to be resolved only by reference to its exhibits. We find by a recital in Ordinance No. 4551 (1975) (Exhibit G) that the Council "is in the process of formulating development policies and plans for the Kakaako area which may involve amendments to the *existing* General Plan, Detailed Land Use Map, Development Plan and the Comprehensive Zoning Ordinances." (Emphasis supplied). Were it not for this recital we would be wholly uninformed by the record as to which of the distinct and separable function of the Council in the planning process the proposed consultant contract relates.

The record adequately informs us that the Kakaako area is included in the existing general plan for the City and County of Honolulu, and this was conceded in argument. It may be debatable whether we are informed by the record as to the existence or nonexistence of a development plan for this area. The arguments which the defendants present contain an assumption that any development plan which the Council

might propose would be an initial development plan and that no development plan now exists. As troubling as this factual question is, I regard it as avoidable. Clearly, the first step in any process which looks to the creation of a development plan for Kakaako, whether an initial or an amended one, must be a review of the general plan as it now exists and its revision, if necessary, to provide the "development objectives and policies" which a development plan implements and accomplishes. Charter § 5-409. The record tells us, at least, that a purpose of the proposed consultant contract is to assist the Council in determining what revisions should be made in the general plan as it affects Kakaako. Is the Council foreclosed from obtaining this assistance because the information obtained might also be relevant to the formulation of a development plan? I think the answer must be that the employment of the consultants, if within the Council's authority in furtherance of its legislative function, is not to be denied to the Council because it might also assist the Council in an activity outside of that legislative function. At the very least, on the present record which leaves the status of the development plans for Kakaako so much in doubt, it seems to me quite unwarranted on our part to taint the consultant contract with a fatal infirmity for this reason.

We are told by the agreed statement of facts that the purpose of the proposed consultant contract is "to review, evaluate, consolidate and update all previous planning studies made of Kakaako and present to the Plaintiff City Council the consultant's considered opinion of the optimum alternatives for the development of Kakaako and propose legislation by which said alternatives may be realized." I find it difficult to better define the investigation which the Council should undertake in formulating a revision of the general plan for this or any other area included in the general plan. *Cf.*, *Dalton v. City and County*, 51 Haw. 400, 462 P.2d 199 (1969). No reference to the preparation of an initial development plan for Kakaako appears in the agreed statement of facts or its exhibits, including the text of the proposed consultant contract. We may not bar the Council from proceeding with this investigation in furtherance of its legislative function to

revise the general plan, merely because it might stray beyond prescribed boundaries and also consider a development plan. If there is forbidden territory into which the Council should not stray, a barrier can be erected to keep it in bounds without excluding it from its assigned responsibility.

To this point, I have been looking only to the Charter to ascertain the scope of the Council's legislative function. The conclusion should be tested by considering whether, under general principles, the formulation and amendment of municipal land use plans is a legislative or executive function. The Charter confuses the issue somewhat by incorporating the provisions with respect to adoption and amendment of the general plan and development plans in Article V, dealing with the executive branch. However, it is beyond argument that the enactment of the ordinance by which such adoption or amendment is effectuated is a legislative act entrusted to the Council in the exercise of its legislative function.[3] It has not been suggested that any part of the executive function has been assigned to the Council. Rather, it appears that the Charter Commission may have departed from a strict separation of powers by assigning to the executive department a portion of the legislative function, being the formulation of ordinances adopting the original general plan and initial development plans. Clearly, that responsibility does not fall within the "implementation and execution of the policies set by the legislative branch", as the primary responsibility of the executive branch is described in the majority opinion. The case thus becomes one in which what

---

[3] "The law is settled that the zoning of property, including the preparation of comprehensive land use plans, involves the exercise of judgment which is legislative in character and is subject to judicial control only if arbitrary and without rational basis." Higginbotham v. Barrett, 473 F.2d 745, 747 (5th Cir. 1973). To the same effect see Diedrich v. Zoning Commission, 393 F.2d 666 (D.C.Cir. 1968), holding that the functions of the District of Columbia Zoning Commission in preparing and promulgating comprehensive land use plans and maps "are obviously exercises of judgment legislative in character and are subject to judicial control only if arbitrary and capricious." In O'Loane v. O'Rourke, 231 Cal.App.2d 774, 42 Cal. Rptr. 283 (1965), it was held that the adoption of a city general plan, although not a precondition to the exercise of zoning control, is a legislative rather than administrative or executive act and subject to referendum.

is, in the basic concept of the separation of powers, a legislative function is sought to be characterized as an executive function. To the extent that the Charter has given it that character, the Charter necessarily controls. However, the implications are to the contrary.

The parties have presented a limited issue, and we should not go outside the narrow limits of the submission in this case. There is no controversy with respect to the propriety of the proposed contract if it will 'assist the Council in the performance of a legislative function. The record before us requires that we consider only the function of amending the general plan, to which I regard the consequent adoption or amendment of development plans as incidental and not requiring separate consideration. The Charter does not expressly or by implication confine the formulation of such amendments to the executive branch. The Council's contentions should be sustained in the case before us and its authority to employ independent contractors to perform the proposed consultative services should be sustained, although we do not have a sufficient record to enable us to consider the propriety of the particular contract.

My disagreement with the majority opinion is fundamental and goes to the basic question of the division of powers between the legislative and executive branches in the Charter. However, even if I were prepared to accept the conclusions of the majority on this question, I could not concur with the posture in which the majority leaves this case. The majority announces a rule which would permit the Council to proceed with the preparation of, or formulation of amendments to, a general plan or development plan if "after a proper request by the city council is made, the executive branch is uncooperative or has failed, within a reasonable period, to assume and proceed with their responsibility.'' The majority opinion also states:

> Critical to this controversy is the fact that the city council never made or submitted a request to the executive branch for the type of study under question. The record is devoid of evidence of any resolution made by the city council to the executive branch accompanied

by proper appropriation, if necessary, requesting the proposed study.

I agree that the record before us, consisting as it does only of the agreed statement of facts, is silent on this question, which the parties obviously considered not relevant in preparing their submission of the case to us. Consequently, nothing in the record supports the finding of fact that "the city council never made or submitted a request." We are wholly uninformed with respect to this fact and if it is critical, as the majority opinion makes it, we can do no more in this case than determine that the rights of the parties depend upon the resolution of the question whether an appropriate and sufficient request was made. That question is not among the issues submitted and I would not regard it as litigated or resolved by the gratuitous statement in the majority opinion. Rather than leave the case in this posture, I would permit the parties to supplement their submission in order to provide a basis in the record for a factual determination whether the past relationship between the Council and the executive branch supports the exercise by the Council of the reserved powers which the majority opinion identifies.