FRANK F. FASI, in his official capacity as Mayor of the City and County of Honolulu; and BONIFACE AIU, in his capacity as a holdover member of the Ethics Commission of the City and County of Honolulu, Plaintiffs, v. CITY COUNCIL OF THE CITY AND COUNTY OF HONOLULU; and ARNOLD MORGADO, JR., JOHN DESOTO, LEIGH–WAI DOO, JOHN HENRY FELIX, GARY GILL, STEPHEN A. HOLMES, DONNA MERCADO KIM, RENE MANSHO, and ANDREW K. MIRIKITANI, in their official capacities as Council members of the City Council of the City and County of Honolulu, Defendants

NO. 15415

JANUARY 15, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY LUM, C.J.

This original action is brought before the Supreme Court of the State of Hawaii upon an agreed statement of facts pursuant to Hawaii Revised Statutes (HRS) § 602–5(3) and Rule 14 of the Hawaii Rules of Appellate Procedure (HRAP).

### I.

Plaintiff Frank F. Fasi is the mayor of the City and County of Honolulu, State of Hawaii and is empowered under § 5–103 of the Revised Charter of the City and County of Honolulu (RCH) to "[e]nforce the provisions of [the] charter, the ordinances of the city and all applicable laws." Plaintiff Boniface Aiu is a duly appointed member of the Ethics Commission whose term expired on December 31, 1990 and is currently holding over until a successor is appointed.

The defendant City Council is the legislative body of the City and County of Honolulu, empowered pursuant to § 3–201, RCH, to enact ordinances. Defendants Arnold Morgado, Jr., John DeSoto,

Leigh–Wai Doo, John Henry Felix, Gary Gill, Stephen A. Holmes, Donna Mercado Kim, Rene Mansho, and Andrew K. Mirikitani are the duly elected and acting members of the City Council and are parties to this proceeding in their official capacities as Council members.

The parties have submitted the following agreed statement of the question in dispute to the supreme court in order to resolve a controversy which exists over the power of the City Council to effect changes to charter provision § 13–103, RCH, by ordinance:

> Does the language of Section 13–103, RCH, which reads, "[e]xcept as otherwise provided by this charter or by *law* . . . ." (emphasis added), allow the City Council to enact those provisions of Ordinance No. 90–54 which prohibit members of certain boards, commissions or committees from "holding over" (continuing to serve in the same capacity beyond the expiration of their terms), notwithstanding the language of Section 13–103(b) of the RCH which states that "[a]ll appointed members [of subject boards and commissions] . . . shall serve until their successors have been appointed and qualified." The boards, commissions or committees to which this question applies are those boards, commissions or committees that are established by City Charter or by City ordinance and the members of which are appointed by the Mayor, subject to the approval or confirmation of the City Council.

We answer the question in the negative, and grant plaintiffs' prayer for relief under the circumstances of this case.

## II.

The city charter provision in question is § 13–103 which was first drafted by the 1971 Charter Commission and approved by the

electorate in 1972.[1] It provides as follows:

Section 13–103. Boards and Commissions—*Except as otherwise provided by this charter or by law*, all boards and commissions established by this charter or by ordinance shall be governed by the following provisions:

(a)    All members shall be appointed by the mayor and confirmed by the council.

(b)    All appointed members shall serve for staggered terms of five years, and *they shall serve until their successors have been appointed and qualified.* The initial appointments shall be as follows:

(1) Five members:     One member each to serve for five, four, three, two, and one year, respectively.

(2) Seven members:    Two members to serve for five years, one member for four years, two members for three years, one member for two years, and one member for one year.

(3) Nine members:     Two members each to serve for five, four, three, and two years, respectively, and one member for one year.

Each succeeding appointment shall be for a term ending five years from the date of the expiration of the term for which the predecessor had been appointed.

(c)    Any vacancy occurring other than by expiration of a term of office shall be filled for the remainder of

---

[1] When originally adopted, the provision was numbered 12–103 but was renumbered in 1978 without change.

such unexpired term in the same manner as for an original appointment.

(d) Temporary vacancies shall be filled by the mayor as provided by ordinance.

(e) A chair shall be elected annually by members from the membership.

(f) A majority of the members shall constitute a quorum.

(g) All meetings shall be held in city hall or other public places.

(h) The affirmative vote of a majority of the entire membership shall be necessary to take any action, and such action shall be made at a meeting open to the public.

(i) All members shall be entitled to be reimbursed for travelling and other necessary expenses incurred by them in the performance of their official duties.

(j) All appointed members may be compensated for their service as provided by ordinance.

(Emphasis added.)

On May 9, 1990, Bill No. 35 (1990), entitled "A Bill For An Ordinance Relating to Boards and Commissions," was passed by defendant City Council. Thereafter it was submitted to the Mayor for his signature, but was returned to defendant City Council disapproved on May 23, 1990. The Mayor's veto was overridden by the City Council by a 9–0 vote on June 20, 1990. Bill No. 35 was then enacted as Ordinance No. 90–54 and took effect on June 20, 1990. Ordinance No. 90–54, § 2, entitled "Method of Appointment on Boards, Commissions and Committees," substantially revises RCH 13–103 in a number of substantive areas but upon which we are not asked to make a determination. The question submitted asks us only to examine the following portion of Ordinance No. 90–54:

Sec. 3–____.3.  Termination of Appointment.

All appointments covered by this article shall terminate on the expiration date noted on the Mayor's letter of appointment, and in no instance shall such appointees immediately continue to serve in the same capacity beyond the expiration date whether as a temporary appointee or as a reappointed member for a full consecutive term.

This provision is intended to bar the "holdover" of appointed members of boards and commissions beyond their appointed term. Thus, it is in fundamental conflict with RCH § 13–103(b) which provides that appointed members serve "until their successors have been appointed and qualified."

## III.

The City Council argues that the charter permits the City Council, by ordinance, to amend or nullify any provision within § 13–103 of the RCH.  The City Council cites, as its authority to do so, the general provision at the beginning of § 13–103, RCH, "[e]xcept as otherwise provided by this charter or by *law*[.]" (Emphasis added)

A basic tenet of municipal corporation law is that an ordinance which conflicts with an express provision in a charter is invalid.

The proposition is self–evident . . . that an ordinance must conform to, be subordinate to, not conflict with, and not exceed the charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state. Ordinances must not only conform with the express terms of the charter, but they must not conflict in any degree with its object or with the purposes for which the local corporation is organized. . . .

5 McQuillin Mun. Corp. § 15.19, at 98–99 (3d ed. 1989) (footnotes omitted). It is also a fundamental tenet of municipal corporation law that a charter may not be amended except by properly initiated and enacted charter amendments. The City Council has no authority to amend the Revised Charter of the City and County of Honolulu. *See* RCH, article XV. *See also* 5 McQuillin Mun. Corp. § 15.01, at 50 ("Whether a proposal is an ordinance or an amendment to the city charter must be determined from the substance of the proposal rather than its name"); *State ex rel. Werner v. Koontz*, 153 Ohio St. 325, 91 N.E.2d 473 (1950) (footnote omitted) (amending the charter "cannot be done with the guise of . . . designating such proposed amendment as an ordinance").

In § 13–103(d) the charter specifically provides that temporary vacancies "shall be filled by the mayor as provided by ordinance." Had the drafters of the charter thought that the general introductory provision in 13–103 expressly granted the council power to modify any section of 13–103, the language empowering the council to act in § 13–103(d) would have no meaning. "It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute." *Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984). To find that the "as provided by . . . law" provision allowed any section of 13–103 to be modified by ordinance would make the provision in 13–103(d) superfluous. Moreover, if we were to adopt the council's position, the council could conceivably, by ordinance, remove the mayor as the appointing authority over board and commission members.

The City Council directs this court to prior and similar ordinances passed under the authority of the charter language "except as otherwise provided by law." None of those ordinances were

challenged and are not the subject of the dispute today. These ordinances are not persuasive to this court that the council may directly contradict or nullify a charter provision by ordinance merely because it has been done before. As we said in *Akahane v. Fasi*, 58 Haw. 74, 565 P.2d 552 (1977), "the Charter has as its basic scheme a clear and definite separation of the legislative power and the executive power of the city and county, vesting the former in the legislative branch represented by the council and the latter in the executive branch headed by the mayor." *Id.* In order to give effect to the council's reading of § 13–103, we would have to ignore the basic rules of statutory construction and the very structure of the charter itself, which anticipates separation of legislative and executive power.

## IV.

Therefore plaintiffs are hereby granted a Declaratory Judgment that the term "law," as used in the language of § 13–103, RCH (1973), as amended, does not include "ordinances." Because the term "law" in the language of § 13–103, RCH, does not include "ordinances," the City Council was not allowed to enact those provisions of Ordinance No. 90–54 which prohibit members of certain boards, commissions or committees from "holding over," notwithstanding the language of § 13–103(b) of the RCH which states "[a]ll appointed members [of subject boards and commissions] . . . shall serve until their successors have been appointed and qualified."

*Jonathan Chun*, Deputy Corporation Counsel, for plaintiffs.
*Diane E. Hosaka*, for defendants City Council and Council members.