BREWER ENVIRONMENTAL INDUSTRIES, INC., Plaintiff–Appellee, v. A.A.T. CHEMICAL, INC., Defendant–Appellant, and CITY AND COUNTY OF HONOLULU, THEODORE JUNG, JOHN DOES 1–5, JOHN DOE CORPORATIONS 1–5, JOHN DOE PARTNERSHIPS AND JOINT VENTURES 1–5, Defendants

NO. 15449

(CIV. NO. 90–3811–12)

JULY 14, 1992

LUM, C.J., WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED, AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN, IN PLACE OF LEVINSON, J., DISQUALIFIED

## OPINION OF THE COURT BY WAKATSUKI, J.

Defendant–Appellant A.A.T. Chemical, Inc. (AAT), appeals from the trial court order granting Plaintiff–Appellee Brewer Environmental Industries, Inc.'s (Brewer) motion for summary judgment. The trial court granted summary judgment in favor of Brewer, thereby invalidating Defendant–Appellee City and County of Honolulu's (City) purported contract award to AAT to supply liquid chlorine, and directing the City to rebid the contract upon new specifications and procedures as required by law.

We affirm.

## I.

Brewer originally instituted this action in its capacity as a taxpayer and bidder to set aside the City's attempted contract award to AAT for the furnishing and delivery of liquid chlorine for water and wastewater treatment under City Proposal Document No. 8684. Brewer sought award of the contract to itself as the lowest responsible bidder, or in the alternative, rebidding of the contract on proper contract specifications and terms free of the irregularities and illegalities which allegedly occurred in the initial bidding process.

In September 1990, the City issued a Notice to Bidders soliciting sealed tenders for the furnishing and delivery of liquid chlorine for water and wastewater treatment for an 18-month period commencing November 1, 1990. The Notice further provided that the form of proposal and specifications could be obtained from the Office of the Division of Purchasing upon application for Proposal Document No. 8684.

Brewer, who had been awarded the contract with the City for the supply of liquid chlorine for 17 previous years, timely submitted its bid in accordance with the statutory and administrative requirements on the specified deadline at 2 p.m. on October 15, 1990. Earlier that morning, however, the City notified Brewer that the deadline for the submission of bids was extended until October 26, 1990 at the request of another potential bidder who was not yet prepared to submit its bid.

In fact, AAT had requested extension of the bidding deadline because:

> The quantity stipulated in the bid document needs clarification as to the number of one–ton cylinders that are *most likely going to be required during the contract period.* This number has a direct bearing on the number of one–ton cylinders that would be required to service the need. . . . Our supplier requires additional time to resolve the issue of sufficient one–ton cylinders. We seek this extension to permit us to resolve the quantity issue since *it directly affects the bid price. The C & C stands to benefit substantially in savings.*

Record on Appeal (ROA), Vol. 1, at 227–28 (emphasis added).

Thereafter, City representative O.B. Hayden advised AAT's President Louis Maurina that AAT could acquire such additional information directly from the City operating personnel at the facilities to be serviced, specifically, the Sand Island treatment plant. AAT subsequently contacted the Sand Island

personnel and obtained specific information which enabled it to conclude that fewer one–ton cylinders would be required than the quantity estimates set forth in the contract specifications.

In the meantime, various Brewer representatives inquired of the City about the reason for the bidding extension. The City simply replied that it favored competition, but never provided any specific, additional information modifying the contract specifications to Brewer. According to City representatives, this was pursuant to the City Purchasing Division's policy of protecting the confidentiality of bidders to promote competitive bidding.

AAT and Brewer were the only bidders for this contract and their bids were opened on October 26, 1990. AAT was the low bidder and was subsequently awarded the contract.

Brewer protested the award of the contract to AAT under the City's administrative procedures, *inter alia*, on the ground that AAT was not a qualified or responsible bidder. By letter dated December 20, 1990, the City advised Brewer that it had considered and rejected Brewer's objections of the contract award to AAT.

On December 3, 1990, Brewer instituted the present action seeking injunctive relief and a mandamus declaring any contract award void and directing the City to award the contract to itself or to order a rebid for the contract.

The circuit court granted Brewer's motion for preliminary injunctive relief, enjoining commencement of the contract award pending a trial on the merits of Brewer's claims. Upon completion of discovery, on March 25, 1991, Brewer filed its summary judgment motion. On June 25, 1991, the order granting Brewer's motion for summary judgment was filed.

## II.

The genesis of much of our State's competitive bidding law is set forth in the decisions of this court in *Lucas v. American–Hawaiian Engineering & Construction Co.*, 16 Haw. 80 (1904),

and *Wilson v. Lord–Young Engineering Co.*, 21 Haw. 87 (1912). In *Lucas*, this court concluded that any irregularity in the bidding process which permits or contributes to bidders submitting bids on different terms or with unequal information invalidates the bidding and any contract awarded thereon. Moreover, where contract specifications are indefinite or misleading as to prevent real competition between the bidders, no valid contract can exist. *Wilson*, 21 Haw. at 89; *see also Federal Elec. Corp. v. Fasi*, 56 Haw. 57, 527 P.2d 1284 (1974).

In *Lucas*, the court held that the indefiniteness of a quantity requirement (the number of existing pilings which could be incorporated into a new structure) invalidated the bidding process and rendered the award and execution of the contract illegal and void. The court explained:

> This tended to prevent competition and to defeat the law requiring the call for tenders. It moreover opened the door to favoritism and fraud by making it possible for the Superintendent of Public Works to give definite assurances to a favored bidder as to the number of old piles which would be permitted to be used in the work; thus enabling him to under bid others who might consider it unsafe to bid on any other basis than that of new piles for the entire work, there being no certainty under the specifications that any old ones could be used.

16 Haw. at 89.

The court concluded that "[g]enuine competition can only result when parties are bidding against each other for precisely the same thing and on precisely the same footing." *Id.* at 90. Therefore, although performance on the contract had already begun and there was no evidence of any actual "inside" information provided to any bidder supplementing the indefinite specification, the mere possibility that inside information could be provided and could be

used to give an advantage to one bidder rendered the bidding process and any contract awarded thereon invalid and void.

In this case, there existed not only the possibility of acquiring additional material information, but the actual receipt of such information modifying the contract specifications by one bidder. AAT contends that Brewer also had equal access to the City operating personnel and could likewise have obtained additional information. The fact that Brewer could also have gained similar information, however, is irrelevant under *Lucas*. It is the very availability of additional information modifying or altering contract specifications, quantities in this instance, which renders the bidding process illegal and invalid. Supplemental information modifying the contract specifications obtained privately are improper precisely because bidders will receive unequal information creating competitive disadvantages among the bidders.

AAT further argues that as the prior contract holder for 17 years with the City, Brewer was intimately familiar with the requirements of the contract and recognized the significant increase in the amount of chlorine required by the new contract. AAT states that Brewer also knew that if postchlorination tests were implemented, the chlorine requirements would naturally increase. AAT states that in fact, Brewer had obtained the same information obtained by AAT from the City operating personnel even prior to the issuance of the Notice to Bidders. Thus, AAT concludes that the parties stood on equal footing in bidding upon the same information available to both parties.

The record reveals that Brewer was aware of the significant increase in the amount of chlorine required by the new contract and had knowledge that if postchlorination procedures were implemented, the chlorine requirements would naturally increase. Unlike AAT, however, Brewer was never given information about the approximate period of postchlorination testing not stated in the contract specifications which directly affected the number of

cylinders required under the contract.[1] Nor was Brewer notified that this additional information modifying the quantities set forth in the contract specifications was available. The record clearly indicates that Brewer bid on the contract as stated in the specifications. Mr. Inglett, who prepared the bid proposal on behalf of Brewer, testified as follows:

> [W]hen that came up as to what impact this [postchlorination] might have on the quantity, that my decision was we were going to bid the contract the way it's written. That's the quantity the City and County is requesting and that's the way we will bid it.
>
> . . . .
>
> I was aware that the chlorine increase would result — would come about from the postchlorination. I assumed in the bidding process that that would happen and stuck to the document.

ROA, Vol. 3, at 237, 240.

Finally, AAT contends that there was no favoritism or bias involved in the bidding process and that the City's policy to protect confidentiality in the bidding process is reasonably designed to encourage competitive bidding. AAT claims that the City did not provide AAT the specific amounts to bid on and that AAT assumed

---

[1] The deposition testimony of Louis R. Maurina, AAT President, reveals that City operating personnel indicated that the EPA–required postchlorination testing procedures would not commence until several months into the contract and would be continued for only one year, not for the entire 18–month term of the contract. The Notice to Bidders, however, based its specifications upon the postchlorination tests running throughout the entire 18–month contract term thereby requiring more cylinders than actually necessary. During this testing period 100 to 150 additional cylinders per month would be required. Therefore, AAT was able to estimate the number of cylinders required to service the City contract. ROA, Vol. 1, at 354–85.

the risk of any miscalculation since the contract specifications would ultimately control.

While the record does not indicate that the City failed to act in good faith, the City's provision of additional information, which in effect altered the contractually specified quantity, destroyed the requisite equal competitive footing of the bidders and invalidated the bidding process. AAT was obviously given a competitive advantage by obtaining additional information which modified the contract specifications and directly affected the bid price.

The dispositive, uncontroverted material facts are that: (1) the contract specifications in the bid documents did not accurately reflect the true quantities required during the contract term, (2) the quantities directly affected the bid itself, and (3) additional information modifying the quantities specified in the bid documents and thereby affecting the bid prices was available and provided to AAT. Such material additional information enabled AAT to bid the contract on the basis of quantities not stated in the contract specifications, thus destroying "genuine competition" among the bidders and invalidating the bidding process. *Lucas*, 16 Haw. at 90. This alone renders the resulting contract void and illegal without the need to address Appellant's other claims.

Affirmed.

*Paul Maki* and *Cora I. O'Donnell*, of Kessner, Duca & Maki, for Appellant A.A.T. Chemical, Inc.

*Erik D. Eike* and *Kenneth R. Kupchak*, of Damon, Key, Bocken, Leong and Kupchak, for Appellee Brewer Environmental Industries, Inc.