911 P.2d 60

Jeremy HARRIS,[1] in his official capacity as Mayor of the City and County of Honolulu; Russell W. Miyake, in his official capacity as Director of Finance, City and County of Honolulu; Malcolm J. Tom, in his official capacity as Chief Budget Officer, City and County of Honolulu; and Darolyn Hatsuko Lendio, in her official capacity as Corporation Counsel, City and County of Honolulu, Plaintiffs–Appellants,

v.

John DeSOTO, Duke Bainum, John Henry Felix, Mufi Hannemann, Stephen A. Holmes, Donna Mercado Kim, Rene Mansho, Andrew K. Mirikitani, and Jon C. Yoshimura, in their official capacities as members of the City Council, City and County of Honolulu; City Council, City and County of Honolulu, Defendants–Appellees.

No. 18072.

Supreme Court of Hawai'i.

Feb. 5, 1996.

1. The present action was initially instituted on November 30, 1993 by Frank F. Fasi, Russell W. Miyake, Paul T. Leong, and Ronald B. Mun in their respective official capacities as Mayor, Director of Finance, Chief Budget Officer, and Corporation Counsel of the City and County of Honolulu. On July 18, 1994, Mayor Fasi stepped down from office to run for governor of the State of Hawai'i. Then–City Managing Director Jeremy Harris stepped in as acting mayor and, by election held September 17, 1994, was duly elected to the office of mayor. Mayor Harris was sworn in on October 7, 1994, and thereafter appointed Malcolm J. Tom as Chief Budget Officer and Darolyn Hatsuko Lendio as Corporation Counsel, replacing Paul T. Leong and Ronald B. Mun, respectively. Russell W. Miyake remains as the City Director of Finance. During the same election of September 17, 1994, defendants-councilmembers Gary Gill, Leigh–Wai Doo, and Arnold Morgado, Jr. were replaced by newly-elected councilmembers Jon C. Yoshimura, Duke Bainum, and Mufi Hannemann, respectively.

Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Malcolm J. Tom and Darolyn Hatsuko Lendio have been substituted automatically for Paul T. Leong and Ronald B. Mun as plaintiffs-appellants, and Jon C. Yoshimura, Duke Bainum, and Mufi Hannemann have been substituted automatically for Gary Gill, Leigh–Wai Doo, and Arnold Morgado, Jr. as defendants-appellees in the present case. Councilmember John DeSoto, the current council chairperson, has also been realigned as lead defendant.

Ronald B. Mun, Former Corporation Counsel, and Robin M. Kishi and Hazel G. Beh, Former Deputies Corporation Counsel, on the briefs, Honolulu, for plaintiffs-appellants.

Paul Devens of Devens, Lo Youth, Nakano & Saito, on the briefs, Honolulu, for defendants-appellees.

Before MOON, C.J., KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiffs-appellants Jeremy Harris, Russell W. Miyake, Malcolm J. Tom, and Darolyn Hatsuko Lendio, in their respective official capacities as Mayor, Director of Finance, Chief Budget Officer, and Corporation Counsel of the City and County of Honolulu [hereinafter, collectively, the administration] appeal the First Circuit Court's order granting summary judgment in favor of defendants-appellees John DeSoto, Duke Bainum, John Henry Felix, Mufi Hannemann, Stephen A. Holmes, Donna Mercado Kim, Rene Mansho, Andrew K. Mirikitani, and Jon C. Yoshimura, in their official capacities as members of the City Council, City and County of Honolulu (the city), and the City Council [hereinafter, collectively, the City Council or the council]. By granting summary judgment in favor of the council, the circuit court upheld the validity of an ordinance recently passed by the council, over the mayor's veto, that effectively vests authority in the council to settle claims, demands, debts, disputes or other matters involving the city, except when settlement would not involve or require payment in excess of $5,000.00.

On appeal, the administration argues essentially that the circuit court erred in granting the council's motion for summary judgment because the ordinance conflicts with and contravenes the provisions, object, purposes, and policies of the Revised Charter of the City and County of Honolulu [hereinafter, the RCH, the charter, or the city charter].

To the extent that the circuit court's award of summary judgment in favor of the council grants exclusive authority in the council to settle or compromise a claim in exchange for consideration *other than:* (1) the commitment of city funds; or (2) an exercise of municipal authority vested exclusively in the council by the charter, we reverse the circuit court's order on the ground that it is inconsistent with the provisions, object, and purposes of the city charter. The circuit court's order is affirmed in all other respects.

## I. *BACKGROUND*

On September 29, 1993, Bill No. 91 (1993), entitled "A Bill For an Ordinance Relating to the Settlement of Claims Against the City," was passed on third reading by the City Council. Bill No. 91 proposed to amend Article 3, Chapter 2 of the Revised .Ordinances of Honolulu 1990 (ROH), to vest exclusive authority in the City Council to settle all claims against the city, and provided in pertinent part that:

The council finds that under the Revised Charter of Honolulu 1973, as amended, the council has the exclusive authority to settle claims made by private parties or government agencies against the city or the city's agencies, officers, or employees. The council has the sole power under the charter to adopt the city budget and to appropriate money for city purposes. No claims against the city can be settled or paid without council appropriation. The charter expressly provides for council review of claims against the city. In contrast, no provision in the charter gives to the executive branch or any official of the executive branch the authority to approve of the settlement of claims or to prevent the council from settling claims.

The council's exclusive authority to settle claims also is supported by the general principle, found in the case law, that in the absence of a contrary provision the power to compromise a claim is lodged with the legislative branch of a municipality. Neither the State constitution nor the general laws of the State contradict the council's finding.

However, the council has been frustrated in its attempt to settle claims and terminate litigation in those cases where the mayor has refused to settle. The corporation counsel has opined that settlement of claims against the city requires the concurrence of both the executive and legislative branches of city government. As a result, the corporation counsel has in the past failed to transmit settlement offers to the council when the mayor has not approved of settlement. In one case, a written offer to settle a substantial case was transmitted by the plaintiff to the corporation counsel in November, 1991, but not transmitted to the council by corporation counsel until September, 1992, *after* the council became aware of its existence and specifically requested it from the corporation counsel.

This practice is unacceptable because it deprives the council of its decision-making responsibilities and permits the mayor, as head of the executive branch, to pursue and continue litigation which may have little or no merit and which commits needed resources from the city's budget and forces the council to appropriate funds for the litigation. The situation is further complicated and exacerbated in instances where the corporation counsel is disqualified from representing the city and the city retains private attorneys. Consistent with the opinion of the corporation counsel, private attorneys representing the city have been instructed that they have no obligation or duty to bring settlement offers to the council for decision unless the offer is first approved by the officials of the executive branch.

The council does not wish to "micromanage" the conduct of litigation by the city's attorneys. Nor does it deem it either desirable or efficient for the council to review every single written settlement of-

fer in all pending cases against the city, regardless of merit. There are claims, however, that, for reasons of policy or financial impact, call for greater review by the council as the city's chief policy-making body and the adopter of the city's budget. Further, it is imperative that, in those instances where the executive branch refuses, for whatever reason, to even consider settlement, but where the council determines that settlement should be pursued, one branch of city government must have the power to make and enforce a settlement decision on behalf of the city. That body is, by charter, the council.

Therefore, the purpose of this ordinance is to: 1) establish a procedure by which the council can specify those claims against the city for which all written settlement offers must be transmitted to the council for review and decision; 2) establish a time period for the transmittal of all such proposals to the council; 3) require the city's legal representative to obtain the recommendation of the city agencies and officials affected by the proposed settlement and transmit the recommendation in writing to the council; and 4) clarify and affirm that where the council makes a decision to settle a claim, the decision is binding on all agencies, officials and employees of the city, and the city's legal representative is required by law to carry out the council's decision without delay and without interference from the executive branch officials.

(Emphasis in original.)

Then–Mayor Fasi vetoed Bill No. 91 on October 13, 1993, and the council overrode the mayor's veto by an eight-to-one vote on October 20, 1993. Bill 91 then became Ordinance No. 93–78, which, as passed, read in pertinent part as follows:

Procedure governing council approval for the settlement of claims against the city.

(a) Except as otherwise provided in Section 2–3.1(d),[2] no claim shall be adjusted, settled, or compromised without the prior approval of the council.

(b) The council shall determine and specify from time to time, by resolution, claims for which all written offers of settlement are to be transmitted to the council by legal counsel. . . .

. . . .

(c) The council may, after deliberation in executive session, accept or reject the offer, or propose a counter-offer. If the council decides to accept the offer of settlement, the council shall do so by adopting a committee report or a resolution specifying the terms of settlement. . . . The decision of the council to accept a settlement offer shall be binding on the city and on legal counsel. . . .

. . . .

(e) Definitions. For the purposes of this section:

. . . .

"Claim" includes any claim, demand, debt, dispute or other matter in favor of or against the city, its agencies, officers or employees, initiated, brought or made by any person as defined in Section 1–4.1, or any federal or state agency. The term includes claims for injunctive, declaratory and extraordinary relief.

Ordinance No. 93–78 (1993).[3]

Thus, in combination with ROH § 2–3.1(d), which vests power in the corporation counsel

2. Revised Ordinances of Honolulu (ROH) § 2–3.1(d) (1990) vests power to settle claims under $5,000 in the corporation counsel and provides further in pertinent part:

**Additional powers, duties and functions.**
(d) Settlement of Claims.
(1) By Corporation Counsel. Have the power to adjust, settle, compromise or submit to arbitration, any action, causes of action, accounts, debts, claims, demands, disputes, and matters in favor of or against the city or in which the city is concerned as debtor or creditor, now existing or which may hereafter arise, not involving or requiring payment in excess of $5,000.00, provided the money to settle claims generally has been appropriated and is available therefor; and provided further, that a quarterly report of all settlements shall be filed with the council within 15 days after the end of each quarter.

ROH § 2–3.1(d) was unaffected by the passage of ROH No. 93–78, and remains in force under the new scheme.

3. Ordinance No. 93–78 also contains a severability clause that provides:

SECTION 3. Severability. If any provision of this ordinance, or application thereof to any

to settle claims against the city for $5,000.00 and less, Ordinance No. 93–78 (1993) effectively vests exclusive power in the council to settle claims in excess of $5,000.00, as well as suits for injunctive, declaratory, and extraordinary relief.

Prior to October 20, 1993, when the ordinance at issue in the present case was passed by the City Council, the corporation counsel would, as a matter of practice, seek the council's approval in settling claims in excess of $5,000. The affidavit of then-corporation counsel Ronald Mun, offered in support of the administration's memorandum in opposition to the council's motion for summary judgment in the circuit court, details the settlement review procedure, averring in pertinent part:

5. All claims or lawsuits are initially reviewed by the staff of the Department of the Corporation Counsel....

....

6. ... If the Department of the Corporation Counsel and/or the involved department, officer, or employee decide that it would be in the City's best interests to settle a claim or lawsuit, a settlement figure is agreed upon.

a. If the settlement figure is $5,000 or less, my staff approves of the settlement without City Council intervention, pursuant to Section 2–3.1(d)(1) of the Revised Ordinances of Honolulu. The amount is then paid by the Department of Finance from the "judgments and losses" account.

b. If the settlement figure is more than $5,000, my staff writes up a memorandum setting forth the facts of the case, the history of settlement negotiations, and the reasons for and against settlement. The assigned deputy signs

the memorandum and it is also approved by the Trials Division Head. If the involved department head agrees with the settlement, he or she signs the memorandum as well. If the involved department head does not agree with the settlement, he or she may refuse to sign the memorandum and may indicate a reason for the disagreement. I will then sign and approve the settlement proposal, and the memorandum is transmitted to the City Council to be placed upon the next scheduled agenda for the Policy Committee's executive session.

7. If the executive (my staff and the involved department) believes that a case should not be settled or that a settlement demand is excessive and unreasonable, the settlement demand is rejected by my staff.

a. We do not transmit the settlement demand to the City Council because of our belief that, settlement being a dual function of the legislative and executive branches, transmission of the demand to the Council, once it has already been rejected by the executive, would be a futile and wasteful gesture.

b. In certain high profile cases or those with obvious policy issues affecting both branches of government, we transmit unreasonable and excessive settlement demands to the City Council, *not* for approval, but for informational purposes only.

(Emphasis in original.)

The administration contends that Bill No. 91 was prompted by the administration's failure to transmit written settlement offers in certain politically-charged "high profile" cases.[4] Concerned that the unilateral settlement authority vested in the council by the passage of Ordinance No. 93–78 would effec-

---

person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of this ordinance which can be given effect without the invalid provision or application, and to this end, the provisions of this ordinance are severable.

**4.** The administration points to settlement offers in *Kroll Associates v. City and County of Honolulu, et al.,* Civil No. 92–00150 (D.Haw.) (challenging propriety of council's commitment of city money by contract above and beyond a lawful

appropriation of $900,000), *Hawai'i's Thousand Friends, et al. v. City and County of Honolulu,* 821 F.Supp. 1368 (D.Hawai'i 1993), and *In the Matter of National Pollution Discharge Elimination System Permit for the City and County of Honolulu, Honouliuli Wastewater Treatment,* Docket No. NPDES–09–92–001 (dealing with the propriety of the discharge of "primarily" rather than "secondarily" treated effluent from the City's wastewater treatment plants).

tively usurp the administration's ability to exercise some of the powers vested in it by express provisions of the City Charter, the administration, on November 30, 1993, filed a Complaint for Declaratory Judgment and Injunctive Relief, seeking a declaration that ROH No. 93–78 is unlawful and void because it violates the RCH.

Thereafter, the council moved for summary judgment, which the circuit court granted by written order filed February 1, 1994. The order provided in pertinent part that:

> First, the City Council is the legislative body of the City and County of Honolulu, empowered pursuant to Section 3–101, RCH, to enact ordinances.

> Second, the City Council has the exclusive power to enact measures to generate monies, adopt an operating and capital budget, and to appropriate money for city purposes. See Section 3–112 and 113, RCH.

> Third, as part of the Executive Operating Budget, the City Council appropriates monies each fiscal year for the purpose of paying settlements, losses and judgments against the City and County of Honolulu.

> Fourth, by ordinance enacted by the City Council, the corporation counsel is given the authority and discretion to settle claims of $5,000 or less without consultation with the City Council. See Section 2–3.1(d)(1), Revised Ordinances of Honolulu (1990).

> Fifth, in order to achieve a settlement in a case involving claim(s) of $5,000 or more, the corporation counsel has historically submitted a settlement proposal to the Policy Committee of the City Council for consideration. The Policy Committee, in executive session, either approves or disapproves the settlement proposal. If the City Council's Policy Committee approves the settlement proposal, the City Council votes on the settlement and approves it by resolution or committee report. If the City Council's Policy Committee does not approve the corporation counsel's settlement proposal, no settlement is achieved and litigation ensues or continues.

The City Council's power to settle or compromise claims is consistent with and derived from its power to appropriate city funds. *George A. Fuller Co. v. Commonwealth,* 303 Mass. 216, 21 N.E.2d 529 (1939), and *Shaw v. Common Council of City of Watertown,* 75 S.D. 241, 63 N.W.2d 252 (1954). See also 56 Am.Jur.2d, *Municipal Corporations,* §§ 808 and 809 (1971).

As noted previously, only the City Council is empowered by the Revised Charter of the City and County of Honolulu to make appropriations of city funds.

Since the City Council's power to settle or compromise claims is derived from its fiscal powers and authority which are specifically provided for by the Revised Charter of the City and County of Honolulu, the enactment of Ordinance 93–78 is consistent with, subordinate to, and does not conflict with or exceed the Revised Charter of the City and County of Honolulu. *Fasi v. City Council of the City & County of Honolulu,* 72 Haw. 513, 823 P.2d 742 (1992).

Further, because the City Council possesses, in pertinent part, the power and authority to appropriate monies for city purposes, the City Council's exercise of the power to settle or compromise claims pursuant to Ordinance 93–78 does not improperly infringe upon a function or power which is vested primarily in the executive branch of the city government.

Finally, the corporation counsel's historical practice of submitting a settlement proposal to the City Council for its review and approval, and making settlement agreements contingent on securing the City Council's approval confirms the City Council's power to control the city's finances and to settle and compromise claims.

Therefore, based on the foregoing, the court declares and concludes that Ordinance No. 93–78 is a valid and lawful enactment by the City Council, City and County of Honolulu.

This timely appeal followed.

## II. *STANDARD OF REVIEW*

It is well settled that:

On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Heatherly v. Hilton Hawaiian Village Joint Venture,* 78 Hawai'i 351, 353, 893 P.2d 779, 781 (1995) (brackets, quotation marks, and citations omitted).

## III. *DISCUSSION*

The administration argues that the circuit court erred in granting summary judgment in favor of the council and upholding Ordinance No. 93–78 because Ordinance No. 93–78 contravenes the provisions, purposes, and policies of the RCH. The administration specifically contends that Ordinance No. 93–78 conflicts with the RCH because: (1) it "conflicts with the 'strong mayor/strong council' form of government which was adopted by the City electorate when approving the City Charter"; (2) control of litigation is vested primarily in the executive branch; (3) the authority to settle litigation is vested primarily in the executive branch subject to the power to appropriate money vested in the legislative branch; (4) a settlement agreement is a contract, and the corporation counsel has the exclusive power to approve all contracts as to form and legality, and the mayor has the power to sign contracts on behalf of the city; (5) the council cannot compel the mayor to exercise his or her power to bind the city to a contract; (6) once the council enacts the executive budget, which includes appropriations made for the settlement of claims, the executive requires no additional approval to settle individual claims as long as the executive does not exceed the budgeted amount; and (7) the council has no authority to settle lawsuits by resolution or ordinance.

The council asserts that the administration's arguments are misplaced because Ordinance No. 93–78 does not contravene the purposes of the RCH and merely reifies a power that had already existed in the council. In other words, Ordinance No. 93–78 is consistent with the RCH because the council possesses the exclusive power to settle claims. We agree with the council's position that Ordinance No. 93–78 is consistent with the RCH, but only to the extent that the ordinance vests power in the council to settle claims where settlement or compromise is offered in consideration for either: (1) the commitment of city funds; or (2) an exercise of municipal authority exclusively vested in the council.

A. *General Principles: An Ordinance May Not Conflict With the Express Terms, Object or Purposes of the City Charter*

**The proposition is self-evident that an ordinance must conform to, be subordinate to, not conflict with and not exceed the charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state.** ***Ordinances must not only conform with the express terms of the charter, but they must not conflict in any degree with its object or with the purposes for which the local corporation was organized.***

*Fasi v. City Council of the City & County of Honolulu,* 72 Haw. 513, 518, 823 P.2d 742, 744 (1992) (internal ellipses and quotation marks omitted) (emphasis added) (quoting 5 E. McQuillin, *The Law of Municipal Corporations,* § 15.19, at 98–99 (3d ed. 1989)).

Moreover, we have also noted that:

The charter has as its basic scheme a clear and definite separation of the legislative power and the executive power of the city and county, vesting the former in the legislative branch represented by the council and the latter in the executive branch headed by the mayor. Under the separation of powers so provided, each branch is coordinate with the other, and neither may exercise the power vested in the other. However, this does not mean that the wall

of separation is complete and either branch is free to exercise its power as it pleases without any say by the other.

*City Council v. Fasi,* 52 Haw. 3, 5, 467 P.2d 576, 578 (1970).

■ In view of the foregoing, as a comprehensive general rule, an ordinance may not conflict with the express provisions, purposes, or object of the City Charter, particularly the principle of separation of powers dictated by the charter, in that neither branch may exercise the powers vested in the other by the charter.

B. *Ordinance No. 93–78 Is Consistent with the Express Provisions, the Object, and the Purposes of the Charter to the Extent that it Vests Power in the Council to Settle Claims With City Funds*

1. **The authority to settle claims with city funds stems from the power to control the city's purse.**

■ The administration argues that, pursuant to RCH § 5–103 (Supp.1993),[5] the mayor has the "sole and exclusive" power to contract on behalf of the city. Because a settlement agreement is a contract, the administration contends that the mayor has at least co-equal authority with the council to accept settlement offers on behalf of the city. Moreover, the administration contends, pursuant to RCH § 9–305 (1984),[6] that the Corporation Counsel, who is appointed and may be removed by the mayor,[7] has the authority to approve as to form and legality all written contracts to which the city is a party. Therefore, because Ordinance No. 93–78, in vesting exclusive settlement authority in the council, detracts from the mayor's and/or the executive branch's ability to carry out its enumerated powers to "approve as to form and legality" and "sign" contracts, the Administration argues that Ordinance No. 93–78 conflicts with and/or contravenes the express provisions, object, and purposes of the RCH, as well as runs counter to the "strong mayor/strong council" form of government espoused by the RCH.

The council contends that the administration's arguments are overly simplistic and merely beg the ultimate question of who, on behalf of the city, has the authority to effect a settlement agreement. The council asserts that settlement authority stems from the fiscal and spending powers vested in the council by the charter, and not from the powers to approve as to form and legality and sign contracts vested in the executive. Therefore, because Ordinance No. 93–78 is founded on powers vested in the council by the charter, the council argues that it is not inconsistent with the charter, nor does it undermine or contravene the express provisions, object, or purposes of the charter.

5. RCH § 5–103 provides in pertinent part that:

The mayor shall be the chief executive officer of the city. The mayor shall have the power to:

. . . .

(h) Sign instruments requiring execution by the city, except those which the director of finance or other officer is authorized to sign by this charter, ordinance or resolution.

6. RCH § 9–305 provides:

CHAPTER 3
PROCUREMENT AND DISPOSITION OF PROPERTY

. . . .

**Section 9–305. Contracts—**
1. Before execution, all written contracts to which the city is a party shall be approved by the corporation counsel as to form and legality. Except as otherwise provided, all such contracts shall be signed by the mayor. Except as provided in paragraph (2) below, nothing in this section and this article shall be construed as granting any authority to the mayor, the corporation counsel, or any department to exercise control over the organization, programs, functions, operations or expenditures of the legislative branch.
2. Before execution, contracts involving financial obligations of the city shall also be approved by the director of finance as to the availability of funds in the amounts and for the purposes set forth therein. Such contracts shall not extend beyond the term for which an appropriation to finance such obligations has been made, except as otherwise provided by this charter. This paragraph shall not apply to obligations for the procurement of utility services.

7. RCH § 5–201 (1984) provides that "[t]here shall be a department of the corporation counsel headed by a corporation counsel who shall be appointed by the mayor, with the approval of the council, and who may be removed by the mayor."

To the extent that Ordinance No. 93–78 vests power in the council to settle claims *with city funds,* we agree with the council for three principal reasons.

### a. *The mayor does not possess the "sole and exclusive" power to sign contracts.*

First, it is questionable whether the mayor has the "sole and exclusive" authority to sign contracts on behalf of the city. RCH § 5–103 does not expressly so provide; to the contrary, RCH § 5–103(h) itself states that the mayor's "signature" power is limited in scope in that the mayor has "the power to ... [s]ign instruments requiring execution by the city, *except those which the director of finance or other officer is authorized to sign by this charter, ordinance, or resolution.*" (Emphasis added.) *See also* Final Report of the Charter Commission, City and County of Honolulu, 1971–1972, at 13 [hereinafter 1972 Charter Commission Report] ("The council is empowered to engage independent contractual services for itself, subject to the availability of legislative funds."); RCH § 9–305(1) (1984) (providing that "nothing in this section and this article shall be construed as granting any authority to the mayor, the corporation counsel or any department to exercise control over the organization, programs, functions, operations or expenditures of the legislative branch.").

Moreover, RCH § 9–305, cited by the administration, and which ostensibly grants broader authority to the mayor, falls under Article IX, Chapter 3 of the RCH, subtitled "Financial Administration" and "Procurement and Disposition of Property," respectively. RCH § 9–305's provisions therefore arguably are limited to the context of contracts to purchase materials, supplies, equipment, and services for the various agencies and bodies of the city government and do not describe an overarching general power to contract on behalf of the city in all matters. *See generally* RCH §§ 9–301 through 9–304 (1984) (delineating procedures for "procurement of all materials, supplies, equipment and services required by any agency of the city.").

In accord with this reasoning, the administration's argument that Ordinance No. 93–78 "compels and forces" the mayor to sign a settlement agreement in the event of council approval is specious. Lacking "sole and exclusive" authority to sign contracts, the administration cannot credibly assert that the council's decision to settle a claim in any way impinges on the mayor's ability to sign contracts. The charter does not require that the mayor sign each and every contract to which the city is a party. The city may validly enter into a contractual agreement with the signature of a duly authorized representative of the city, which in some—but clearly not all—cases may be the mayor. In other words, no settlement agreements in cases committing city funds need be signed by the mayor to be valid; the mayor therefore cannot complain that the council's decision to settle a case based on Ordinance No. 93–78 "compels or forces" the mayor to sign an agreement against his or her will because the mayor need not sign the agreement in order for the agreement to be valid, and, ultimately, he or she need not be involved in the process at all.

Moreover, the converse proposition is equally untrue. The powers to settle vested in the council as explicated by Ordinance No. 93–78 do not *divest* the mayor of any power to sign contracts that he or she is authorized by the charter to sign; the fact that authority to settle claims against the city with city funds is vested in the council does not prohibit the mayor from signing a settlement agreement on behalf of the city, provided settlement is offered in consideration for money, and the council has approved and authorized the commitment of city funds in the settlement amount. Any inability on the part of the mayor to actually sign a settlement agreement under the scheme set out by Ordinance No. 93–78 would stem solely from the mayor's own refusal to sign the agreement.

Nor does Ordinance No. 93–78 set out a scheme whereby no one would be authorized to sign a settlement agreement. If authorized in writing by the council, the corporation counsel could, in compliance with HRS

§ 605–7 (1993) [8] and Hawai'i Rules of Professional Conduct (HRPC) Rule 1.2(a) (1995),[9] affix his or her signature on a settlement agreement on behalf of the city.

b. *The executive powers to "approve as to form and legality" and to "sign" contracts do not include the power to settle claims.*

Second, the powers to "sign" and "approve as to form and legality" are not necessarily coextensive with, and do not necessarily include, the authority to enter into or to not enter into a settlement agreement. As the chief executive officer of the city, the mayor is appropriately the *one individual* charged with the responsibility of representing the city in its contracts. *See, e.g.,* 1972 Charter Commission Report at 11 ("[T]he [1958 version of the] charter concentrates on the mayor. He was made strong in order to make one person responsible and accountable for city administration and given the tools with which to do the job."). Accordingly, the corporation counsel is also appropriately charged with the duty of assisting the mayor in ensuring the propriety of the form and legality of the documents the mayor is charged with the duty to sign.

Yet this is not to say that the powers to approve as to form and legality and to sign contracts necessarily entail or include the power to commit the city's funds to a particular expenditure. As will be further discussed *infra,* the authority to raise, appropriate, distribute, and ultimately spend city funds is lodged in the legislative branch alone. With the charter's concept of separation of powers in mind, the mayor's power to sign contracts, and the corporation counsel's power to approve contracts as to form and legality, are more appropriately interpreted as powers in aid of the administrative functions of the executive branch and not as substantive quasi-legislative powers to commit municipal funds. The executive role of the mayor was strengthened to better equip the mayor to handle "the increasing administrative complexity of city government" and not to imbue the executive with legislative authority. *See* 1972 Charter Commission Report at 11 ("The Commission hopes that the strong mayor-strong council form of government which it has sought to create will strengthen the council's role of policy-making without permitting interference in administrative matters. At the same time, it should be noted that the executive role of the mayor was strengthened to meet the increasing administrative complexity of city government."). Under this interpretation, the mayor's signature on a contract to commit municipal funds manifests the approval of the city by its chief executive officer only when the chief executive officer is imbued, by the council's approval of the executive budget or otherwise, with the authority to so agree to the commitment and expenditure of municipal funds. As the council correctly notes, the dispositive issue is who possesses the authority to effect a settlement agreement on behalf of the city. In the context of the dispute at issue in the present case, the executive's power to approve as to form and legality, and to sign, are invoked *after* the actual decision to settle or compromise has been made.

In accord with this reasoning, the administration's argument that, once the council has appropriated funds for the settlement of claims, the executive branch has unlimited authority to settle claims within the total amount appropriated is flawed. The legislative branch's power to control the purse not only necessarily includes the power to appropriate municipal funds for a particular purpose, but also in turn necessarily includes the power to dictate the means by which, and, in this case, in what amounts, the earmarked

8. HRS § 605–7 provides:
   **Control of action; power to settle.** The practitioners licensed by the supreme court shall have control to judgment and execution, of all suits and defenses confided to them; provided that no practitioner shall have power to compromise, arbitrate, or settle such matters confided to the practitioner, unless upon special authority in writing from the practitioner's client.

9. HRPC Rule 1.2(a) provides in pertinent part:
   SCOPE OF REPRESENTATION.
   (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which the objectives are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

funds are expended. In this sense, by maintaining and incorporating the provisions of ROH § 2–3.1(d), the scheme for the settlement of claims under Ordinance No. 93–78 preserves the previous delegation of authority to the executive branch to settle claims for $5,000.00 and less. However, the fact that the council annually appropriates a lump sum based on total claim settlement expenditures in the past does not constitute an implicit modification of the delegation of authority to settle expressly and specifically delineated in ROH § 2–3.1(d).

### c. The council possesses the power to control the city's purse.

Finally, and most importantly, the ultimate issue of settlement authority cannot be resolved without reference to the council's control over the city's purse. RCH § 3–112 (1984) ("The council . . . shall also enact such measures as will yield sufficient moneys, together with available surplus and other available moneys, to balance the budget."); RCH § 3–113 (1984) ("The council shall adopt an executive operating and capital program and enact the necessary budget ordinances annually and provide for the financing thereof."). As the 1958 charter commission noted, "[i]t is axiomatic that the person who 'foots the bill' should have a voice in incurring the obligation." *Report of the Honolulu Charter Commission,* (May 8, 1958) [hereinafter 1958 Charter Commission Report] at 6. Consistent with this reasoning, unlike the mayor's power to sign, and the corporation counsel's power to approve as to form and legality, the council's fiscal powers necessarily entail and include the power to settle claims. Lawsuits may involve judgments in large amounts and are costly to litigate. Also, the decision to settle or compromise claims invariably involves an exercise of discretion regarding the

commitment of funds. This exercise of discretion further involves a balancing of the cost to litigate, or to continue to litigate, and the cost of paying or accepting a settlement amount, in the context of the city's entire financial situation.[10] As the body charged by the charter with the responsibility to manage the fiscal integrity of the city, the council is therefore appropriately in the best position to decide whether to settle a claim or to allow litigation to commence or continue.

In view of the foregoing, we hold that the authority to settle claims with city funds on behalf of the city stems from the fiscal and spending powers vested in the council by the RCH. The administration's arguments that Ordinance No. 93–78 is inconsistent with the object and purposes of the RCH, most notably the principle of separation of powers underlying the scheme of municipal government framed by the RCH, are therefore mistaken.

### 2. Other Jurisdictions Have Held that the Power to Settle Or Compromise Claims for Money Lies Exclusively in the Legislative Branch

Consistent with our holding today, several other jurisdictions that have had the opportunity to address the issue have held that, absent a contrary provision, the power to settle or compromise claims lies exclusively in the legislative branch of municipal government. For example, in *City of Fairmont v. Hawkins,* 172 W.Va. 240, 304 S.E.2d 824 (1983), Charles Glaspell, a Fairmont resident, brought a property damage suit against the City of Fairmont for water damage. Appellee Hawkins, Fairmont's mayor, conducted a personal investigation of the damage to the claimant's home, and, thereafter, Glaspell approached Hawkins and offered to settle the claim for $8,500. The City Attorney in-

---

10. Moreover, the administration does not contest the fact that the appropriation of funds for municipal purposes is a legislative function within the purview of the powers vested in the council by RCH § 3–101. The administration's argument that the council may not settle cases by ordinance is therefore mistaken; in cases where settlement or compromise is offered in exchange for the commitment of city funds, the council may, by ordinance, appropriate municipal funds for the settlement of a particular claim. Such an ordinance would be required by RCH § 3–203, as the administration correctly notes, to be presented to the Mayor for approval or veto. However, pursuant to the same provision, the council may override the mayor's veto by a two-thirds vote in favor of the ordinance. Thus the final authority to pass the ordinance ultimately lies with the council, both substantively, pursuant to its fiscal powers, and procedurally, pursuant to RCH § 3–203.

formed Hawkins that the claim should be litigated, but that he, as mayor, had the power to settle it. Hawkins, without any formal action by the City Board of Directors (the legislative body of the city government), had a check drawn on the city water department's account for $8,500.00 made payable to Glaspell. The city finance director refused to sign the check and protested, but Hawkins signed the check on his own authority. The city sued Hawkins, seeking to recover the allegedly improper settlement, and, the circuit court exonerated Hawkins.

The Supreme Court of Appeals of West Virginia disagreed and, in reversing the circuit court, held:

> We begin by noting that our general municipal statutes authorize a municipality to compromise lawful claims presented or filed against it. A municipality has the plenary power and authority "to institute, maintain and defend any civil action or other proceeding in any court." W.Va.Code, 8–12–1(3). And, under W.Va.Code, 8–12–2(4), municipalities are authorized to provide in their charters or by ordinance for "[t]he presentation, ascertainment, disposition and discharge of claims against the city."
>
> As a corollary to this rule is the principle that *in the absence of some contrary provision, the power to compromise a claim is lodged with the legislative branch of the municipality and, therefore, a mayor is not empowered to compromise claims.* ... None of the parties point to any specific statutory or charter provisions that empower the mayor to compromise claims on behalf of the city.

*Id.* 304 S.E.2d at 826 (citations omitted); *see also Nottingham v. City of Yukon,* 766 P.2d 973, 975 (Okla.1988) ("In the absence of some contrary provision, power to compromise a claim is lodged with the legislative branch of a municipality.... Matters of legislative concern, such as the assertion of the city's legal rights, should be addressed by the city council, not the city manager."); *Snyder v. City of St. Paul,* 267 N.W. 249, 250 (Minn. 1936) ("[O]rdinarily, power to compromise claims is inherent in the common council as a representative of the municipality."); *City of*

*Louisville v. Murphey,* 5 S.W. 194, 198 (Ky. 1887) ("We think the mayor has no general power to authorize litigation in behalf of the city, or to control it. If so, he could disregard the legislative will of the municipality, bringing and dismissing suits at his pleasure."); *City of Owensboro v. Weir,* 24 S.W. 115, 117 (Ky.1893) (same); *Shaw v. Common Council of City of Watertown,* 75 S.D. 241, 63 N.W.2d 252, 255 (1954) ("We unhesitatingly conclude, after a careful review of all of our statutes dealing with municipal corporations, that the power to control litigation on behalf or in the interests of a municipal corporation of the character of the city of Watertown rests solely with the common council."); *see also generally* 56 Am.Jur.2d *Municipal Corporations, Counties and Other Political Subdivisions,* § 808 (1971) at 809 ("In municipal corporations proper the power to compromise usually exists in the governing legislative body, generally denominated the common council. Thus, it has been held that the presentation of a claim to the city council being a mere condition precedent to the right of the claimant to resort to the court, it is within the power of the council, where the claim is of such a nature as to come within its jurisdiction, to compromise and settle such claim either before or after an action is brought in the courts thereon."); *Id.,* § 811 at 810 ("The mayor of a city cannot, unless specifically authorized, compromise any claim, or, by acting under such a compromise, estop the assertion of the city's legal rights."); Annotation, *Power of City, Town, or County or Their Officials to Compromise Claim,* 15 A.L.R.2d 1359, 1383 (1951 & Supp. 1995) ("in municipal corporations proper the power to compromise usually exists in the governing legislative body, generally denominated the common council"; providing an extensive list of case authority for the proposition).

Moreover, in so holding, the *Hawkins* court took special notice of the fact that the mayor had discussions with the city board of directors regarding settlement. The court noted:

> Perhaps, in an implied acknowledgement that he had no specific authority, Hawkins asserts that he had discussions with the

Board of Directors, the legislative body, on one or more occasions and a majority agreed the claim should be settled and orally authorized him to settle it. Significantly, there was no claim made that the Board ever authorized settlement at a particular figure.

*Id.* (footnote omitted).

Similarly, in the present case, the administration points to no express provision in the RCH vesting authority in the executive branch to settle or compromise claims. Moreover, notwithstanding the corporation counsel's explanation of its actions in the past, the administration has engaged in the general practice of seeking the council's approval of settlement offers for claims that exceed $5,000. As we believe the circuit court appropriately noted in its order, "the corporation counsel's historical practice of submitting a settlement proposal to the City Council for its review and approval, and making settlement agreements contingent on securing the City Council's approval confirms the City Council's power to control the city's finances and to settle and compromise claims."

C. *Ordinance No. 93–78 Is Inconsistent with the Provisions, Object, and Purposes of the Charter to the Extent That It Vests Power in the Council to Settle Claims by Means Other Than With City Funds Or Through an Exercise of Authority Vested Exclusively in the Council by the Charter*

■ Although Ordinance No. 93–78 is consistent with the provisions, object, and purposes of the charter to the extent that it vests power in the council to settle claims with city funds, the scope of settlement authority vested in the council by Ordinance No. 93–78 is ostensibly not limited to the power to settle claims with city funds. Ordinance No. 93–78 provides in pertinent part that, "[e]xcept as otherwise provided in [ROH] Section 2–3.1(d), no claim shall be adjusted, settled or compromised without the prior approval of the council," and that "[t]he decision of the council to accept a settlement offer shall be binding on the city and on legal counsel." The scope of the term "claim," as

defined by the Ordinance, includes "claims for injunctive, declaratory and extraordinary relief." Pursuant to Ordinance No. 93–78, therefore, the council has the power to "accept" *any* offer made by a claimant and, should the council "accept" the offer on its terms, the council's acceptance is binding on the city, and the city is bound to comply with the terms of the offer or be in breach of the settlement agreement.

Under the scheme as set out by the Ordinance, potential conflicts with the object and purposes of the charter arise. As previously noted, at the heart of the form of government prescribed by the charter is the principle of separation of powers, in that each coordinate branch of municipal government is charged with particular governmental functions, largely free from interference by the others. As written, Ordinance No. 93–78 violates the principle of separation of powers to the extent that it essentially grants to the council the power to bind the city to *any* terms, whether or not the terms fall within the powers of the council, by granting the power to the council to accept any offer of settlement for a claim against the city, thereby binding the city to the terms of the agreement.

Pursuant to this logic, the council could potentially affect and/or control any aspect of city government that happens to be the subject of a "claim" against the city—a situation clearly in conflict with the system of separation of powers mandated by the charter. As an example, in *Sussel v. Civil Service Commission,* 74 Haw. 599, 851 P.2d 311, *reconsideration denied,* 74 Haw. 650, 857 P.2d 600 (1993), Sussel was appointed to the position of administrator of the O'ahu Civil Defense Agency (OCDA) by then-mayor Eileen Anderson. After Anderson was defeated in 1985 by Frank Fasi, Mayor Fasi announced that George Kekuna would be taking over the administration of the OCDA and executed what Fasi termed a "downward reallocation" of Sussel's position. Sussel sued the mayor, among others, for what he claimed was his illegal demotion and brought claims in both state and federal courts. Had Ordinance No. 93–78 been in effect at the time, Sussel could have offered to settle the cases

for reinstatement, the corporation counsel would have been required to transmit the offer, and the council could have accepted it, thereby binding the city and its officials to the terms of the agreement, requiring the mayor to reinstate Sussel and effectively controlling the mayor's decision to appoint his staff. Under the power granted to the council by Ordinance No. 93–78, the council could similarly affect and/or control myriad other aspects and functions of city government, seemingly limited only by the topic of the dispute. *See, e.g., Price v. Zoning Bd. of Appeals of Honolulu,* 77 Hawai'i 168, 883 P.2d 629 (1994) (assessment of fines for violation of zoning ordinance); *Bishop Square Assoc. v. City and County of Honolulu,* 76 Hawai'i 232, 873 P.2d 770 (1994) (property tax assessment); *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 868 P.2d 1193 (1994) (eminent domain); *Hawai'i's Thousand Friends v. City and County of Honolulu,* 75 Haw. 237, 858 P.2d 726 (1993) (special management area use permit); *Korean Buddhist Dae Won Sa Temple v. Zoning Bd. of Appeals of the City and County of Honolulu,* 9 Haw.App. 298, 837 P.2d 311 (alleged zoning regulation violations), *reconsideration denied,* 9 Haw.App. 659, 833 P.2d 98, *cert. granted,* 73 Haw. 626, 834 P.2d 1315, *cert. dismissed,* 74 Haw. 651, 843 P.2d 144 (1992); *Brewer Envtl. Indus., Inc. v. A.A.T. Chem., Inc.,* 73 Haw. 344, 832 P.2d 276 (1992) (City contract bidding process); *Doe v. City and County of Honolulu,* 8 Haw.App. 571, 816 P.2d 306 (1991) (Honolulu Fire Department employee drug screening program); *McCloskey v. Honolulu Police Dept.,* 71 Haw. 568, 799 P.2d 953 (1990) (Honolulu Police Department employee drug screening program); *Okuda v. Ching,* 71 Haw. 140, 785 P.2d 943 (1990) (power of city prosecutor to employ private counsel to prosecute particular cases); *Gibb v. Spiker,* 68 Haw. 432, 718 P.2d 1076 (1986) (re-employment of police officer suspected of criminal conduct); *Mink v. Pua,* 68 Haw. 263, 711 P.2d 723 (1985) (eligibility of recalled city councilmembers to run as candidates to fill the vacancy created for their unexpired term by their recall); *Reppun v. Board of Water Supply,* 65 Haw. 531, 656 P.2d 57 (1982) (riparian water rights), *cert. denied,* 471 U.S. 1014, 105 S.Ct.

2016, 85 L.Ed.2d 298 (1985); *Nakamoto v. Fasi,* 64 Haw. 17, 635 P.2d 946 (1981) (action seeking permanent injunction prohibiting enforcement of City policy requiring rock concert promoters at city-run facility to conduct inspections of patrons for bottles and cans prior to entry of arena); *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980) (award of contract for provision of city bus services); *Life of the Land, Inc. v. City Council of the City and County of Honolulu,* 61 Haw. 390, 606 P.2d 866 (1980) (spot zoning); *McMahon v. Office of City and County of Honolulu, Prosecuting Attorney,* 51 Haw. 589, 465 P.2d 549 (1970) (presence of court reporter at grand jury session; propriety of presentation at grand jury hearing of evidence previously ruled inadmissible; petition for writ of prohibition); *Salvador v. Doi,* 50 Haw. 249, 438 P.2d 392 (1968) (sufficiency of indictment; petition for writ of prohibition).

Thus, in sum, Ordinance No. 93–78 is consistent with the provisions, object, and purposes of the charter insofar as it reifies the principle that the fiscal powers of the municipality are ultimately lodged in the city council as the legislative branch of city government. To the extent that a decision to compromise or settle a claim on behalf of the city is essentially fiscal, in that the decision solely concerns the commitment of city funds and a weighing of the economic cost considerations of settlement versus litigation, exclusive settlement authority is appropriately placed in the council. The fiscal powers of the council do not, however, entitle the council effectively to control functions and aspects of municipal government *outside* the authority prescribed it by the charter. In other words, the council may not exceed its legislative function and impinge upon the powers vested in the executive branch under the guise of settlement authority. Therefore, notwithstanding the settlement of claims solely involving the commitment of city funds, the council's settlement authority vested in the council by Ordinance No. 93–78 is also limited to cases where settlement or compromise is offered in consideration for an exercise of municipal authority exclusively vested in the council by the charter.

It is axiomatic that, as a general principle, the scope of authority of a branch of municipal government to settle a claim on behalf of the city is limited by the authority vested in that branch to pledge, grant, or commit the consideration sought by the claimant or offered by the city in settlement. Thus, where the consideration for settlement involves the commitment of city funds or an exercise of municipal authority *exclusively* vested in the council by the charter, the council may *alone* pledge, grant, or commit the settlement consideration. Similarly, where the consideration for settlement involves an exercise of municipal authority *exclusively* vested in the executive, the executive may *alone* pledge, grant, or commit the settlement consideration. However, where the consideration for settlement of a claim requires (1) both an exercise of municipal authority vested exclusively by the charter in the council and an exercise of municipal authority vested exclusively by the charter in the executive, or (2) an exercise of municipal authority vested by the charter in both the council and the executive, the council and the executive must concur in order to accept or make an offer of settlement.

## IV. *CONCLUSION*

Therefore, to the extent that the circuit court's award of summary judgment in favor of the council grants exclusive authority in the council to settle or compromise a claim in exchange for consideration *other than:* (1) the commitment of city funds; or (2) an exercise of municipal authority vested exclusively in the council by the charter, we reverse the circuit court's order on the ground that it is inconsistent with the provisions, object, and purposes of the charter. The circuit court's order is affirmed in all other respects.